No. 25-2783

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

In re City of Chester, Pennsylvania

Chester Water Authority,
Appellant,

v.

City of Chester, Pennsylvania,
Appellee.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania No. 2:25-cv-1114 (Perez, J.),
Dismissing on Jurisdictional Grounds from Bankr. Case No. 22-13032 (Chan, J.)

## APPELLEE'S MOTION TO DISMISS APPEAL FOR LACK OF
## JURISDICTION AND OPPOSITION TO MOTION TO
## EXPEDITE BRIEFING

Tobey M. Daluz
Margaret A. Vesper
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 864-8148
Email: daluzt@ballardspahr.com
        vesperm@ballardspahr.com

Matthew G. Summers
Laurel D. Roglen
Nicholas J. Brannick
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4465
Email: summersm@ballardspahr.com
        roglenl@ballardspahr.com
        brannickn@ballardspahr.com

*October 14, 2025*          *Counsel for Appellee City of Chester, Pennsylvania*

Appellee City of Chester, Pennsylvania (the "City" or "Debtor") moves to dismiss this appeal (the "Motion to Dismiss"), opposes the *Motion to Expedite* [Dkt. No. 18][1] (the "Motion to Expedite") filed by Appellant Chester Water Authority ("CWA"), and cross-moves to stay briefing in this appeal until the Court rules on the Motion to Dismiss.

Contrary to CWA's Motion to Expedite and *Concise Summary of the Case* [Dkt. No 17], the United States District Court for the Eastern District of Pennsylvania (the "District Court") determined that it lacked jurisdiction to reach the merits of CWA's appeal because (i) the interlocutory order of the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") enforcing the automatic stay is not a preliminary injunction, and (ii) a piecemeal appeal from that interlocutory order would not materially advance the ultimate termination of the litigation as to either the Stay Violation Motion (defined below) or the bankruptcy proceeding.  The propriety of the underlying Bankruptcy Court orders is simply not before this Court as the merits were never fully briefed before or adjudicated by the District Court and CWA's appeal was dismissed on

---

[1] Items from the docket of this appeal are identified as "Dkt. No." and items from the docket in the United States District Court for the Eastern District of Pennsylvania appeal, Case No. 2:25-cv-1114, are identified as "Dist. Ct. Dkt. No."  Items from the docket of the Chapter 9 Case (as defined below) are identified as "Bk. Dkt. No."

jurisdictional grounds. Respectfully, this Court lacks jurisdiction to reverse that determination. As such, this appeal should be dismissed.

CWA is attempting to leapfrog District Court review, convince this Court there is urgency where there is not, and force this Court to consider the merits of the Bankruptcy Court's orders, despite the District Court's denial of its motion to certify a direct appeal [Dist. Ct. Dkt. No. 51]. Though CWA's claimed constitutional harms do not exist at all, those purported harms cannot be addressed by this Court through expedited briefing because the merits are not properly before this Court and should be dismissed out of hand. Thus, there is no "exceptional reason that warrants expedition" and CWA's Motion should be denied. *See* 3d Cir. L.A.R. 4.1.

Instead, briefing on this matter should be stayed until this Court rules on the City's Motion to Dismiss, to prevent needless briefing on issues this Court need not decide.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. The Bankruptcy Case and the City's Right to Dissolve CWA Under Pennsylvania Law

The City is the debtor in a proceeding pending under chapter 9 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") before the Bankruptcy Court in the matter captioned *In re City of Chester, Pennsylvania*, Case No. 22-13032-AMC (Bankr. E.D. Pa.) (the "Chapter 9 Case").

On June 22, 2020, prior to initiating the Chapter 9 Case, Michael T. Doweary was appointed to serve as Receiver for the City pursuant to the Municipalities Financial Recovery Act of 1987, P.L. 246, No. 47, 53 P.S. §§ 11701.101 *et seq.* ("Act 47").  Under Act 47, the Receiver has the exclusive authority to act on behalf of the City in the Chapter 9 Case.  *Id.* § 11701.706(a)(9).  Effective July 1, 2025, Vijay Kapoor now serves as the Receiver for the City.

CWA is a municipal water authority created by the City in 1939 under the Pennsylvania Municipal Authorities Act of 1935, now codified at 53 Pa. C.S. §§ 5601 *et seq.* (the "MAA").  *See In re Chester Water Auth. Tr.*, 263 A.3d 689, 692 (Pa. Commw. Ct. 2021) (the "Commonwealth Court Decision").

Since 2019, the City and CWA have been engaged in litigation regarding the City's ability to dissolve CWA and take possession of its assets pursuant to section 5622(a) of the MAA.  *See id.* at 693.  CWA asserts that a 2012 amendment to section 5610 of the MAA rewrote section 5622 of the MAA and eviscerated 50 years of case law interpreting section 5622 of the MAA.  *See id.* at *passim*.  CWA lost that argument before the Pennsylvania Commonwealth Court.  *See id.* at 702.  CWA appealed the Commonwealth Court Decision to the Pennsylvania Supreme Court, which appeal remains pending.

On August 26, 2024, the City filed its *Plan for the Adjustment of Debts of the City of Chester*.  *See* Bk. Dkt. No. 583 (the "Plan").  Among other things, as one of

its means for implementation, the Plan contemplates the dissolution of CWA under the MAA, consistent with the Commonwealth Court Decision, following a process through which the City will seek requests for proposal to purchase CWA's assets (the "RFP Process").  *See id.* Art. IV.D.

## B.    CWA's Violation of the Automatic Stay

On February 7, 2025, the City filed a motion asserting that CWA had violated the automatic stay imposed under 11 U.S.C. § 362(a)(3), in part by issuing certain requests under the Pennsylvania Right to Know Law, 65 P.S. §§ 67.101 *et seq.* (the "RTKL Requests").  *See* Bk. Dkt. No. 679 (the "Stay Violation Motion").  These RTKL Requests included the following language:

> The purpose of this Right-to-Know Law Request is to determine whether your Agency is participating in efforts to dissolve the CWA's Board of Directors, terminate the CWA's legal existence, and monetize/privatize the CWA.  We understand that you may have been solicited to participate in this conspiracy with the Receiver to effectuate the hostile takeover of the CWA by engaging in this sham RFQ process. If true, why would you be involved in such an effort to depose the board, seize the assets and terminate the governance of a well-run, award-winning municipal authority?  In addition to its other legal duties to its ratepayers, the CWA's bond indenture provides that the CWA "covenants that it will at all times . . . maintain its existence and franchises and defend its right to own and operate the Water System for the benefit of the bondholders and the users of the Water System."  The CWA takes this commitment seriously.

Stay Violation Motion at 12 and Ex. 1 (footnote omitted).

Five days later, on February 12, 2025, the Bankruptcy Court held an emergency preliminary hearing (the "Hearing") on the Stay Violation Motion and

found that the RTKL Requests violated the automatic stay. *See* Bk. Dkt. No. 707 (Feb. 12, 2025 Hrg. Tr.). The Bankruptcy Court stated that the scope of the Hearing was limited to the RTKL Requests and that the parties "can do briefing and have an evidentiary hearing later on." Feb. 12, 2025 Hrg. Tr. at 6:24-25. The Bankruptcy Court asked the City and CWA to "come together with a proposed scheduling order for when . . . discovery could get done and when [the parties were] going to come back in front of" the Bankruptcy Court. *Id.* at 27:22-24.

On February 13, 2025, the Bankruptcy Court entered the *Order Enforcing the Automatic Stay Against the Chester Water Authority* [Bk. Dkt. No. 692] (the "Original Stay Enforcement Order"). Paragraph 5 of the Original Stay Enforcement Order states: "By no later than February 19, 2025, the City and CWA shall submit a scheduling order that addresses any further briefing and discovery necessary to resolve all remaining issues related to the Motion." *Id.* ¶ 5.

Following CWA's filing of a motion to reconsider the Original Stay Enforcement Order [Bk. Dkt. No. 695] and competing scheduling orders [Bk. Dkt. Nos. 703 & 704], on February 20, 2025, the Bankruptcy Court held a hearing. On February 21, 2025, the Bankruptcy Court entered the *Amended Order Enforcing the Automatic Stay Against the Chester Water Authority* [Bk. Dkt. No. 713] (the "Amended Order").

The Amended Order retains the Bankruptcy Court's ruling from the Hearing and Original Stay Enforcement Order that the RTKL Requests violated the automatic stay. *See* Bk. Dkt. No. 713. Paragraph 4 of the Amended Order provides: "[u]ntil further order of this Court, CWA is enjoined from issuing any RTKL request to any entity that in any way refers to or relates to the RFP Process." *Id*. Paragraph 5 of the Amended Order still provides: "[t]he City and CWA shall submit a scheduling order that addresses any further briefing and discovery necessary to resolve all remaining issues related to the Motion." *Id*.

On April 9, 2025, the Bankruptcy Court entered a scheduling order [Bk. Dkt. No. 781], which was subsequently amended by agreement of the parties on May 20, 2025 [Bk. Dkt. No. 816] (the "Amended Scheduling Order"). However, due to CWA's refusal to engage in the discovery process, spurring numerous discovery conferences, hearings, and motions, the Amended Scheduling Order has been surpassed, and no revised order scheduling a further hearing on the Stay Violation Motion has yet been sought by CWA or entered by the Bankruptcy Court.

Rather than properly litigate the matter to a final order in the Bankruptcy Court, on February 27, 2025, CWA chose to appeal the Amended Order [Bk. Dkt. No. 720] (the "Notice of Appeal"). The Notice of Appeal was not accompanied by a motion for leave to appeal pursuant to Fed. R. Bankr. P. 8004.

On March 10, 2025, CWA filed a motion in the Bankruptcy Court to stay the Amended Order pending the District Court appeal pursuant to Fed. R. Bankr. P. 8007(a) on largely the same grounds asserted in the Motion to Expedite. *See* Bk. Dkt. No. 736 ("First Motion to Stay").  The City opposed the First Motion to Stay, as CWA's arguments seeking to excuse it from application of the automatic stay are all without merit.  Bk. Dkt. No. 747.  On April 2, 2025, the Bankruptcy Court held a hearing on and denied the First Motion to Stay, rejecting each and every one of CWA's contrived constitutional arguments. *See* Dist. Ct. Dkt. 5; Bk. Dkt. Nos. 771 & 775; Apr. 2, 2025 Hrg. Tr. at 8:15-29:6.

## C. District Court Rejects the Interlocutory Appeal and CWA's Request to Certify Direct Appeal to This Court

On April 17, 2025, the City filed a motion to dismiss the appeal as an improper appeal of an interlocutory order without leave of the Bankruptcy Court or District Court [Dist. Ct. Dkt. No. 7] ("District Court MTD").  CWA opposed the District Court MTD on May 8, 2025, arguing that the Amended Order was actually a preliminary injunction subject to direct review by the District Court pursuant to 28 U.S.C. § 1292(a), and even if not, asking the District Court to hear its appeal from the interlocutory order anyway. *See* Dist. Ct. Dkt. No. 18.  On May 25, 2025, the City filed a reply in support of the District Court MTD.  Dist. Ct. Dkt. No. 25.

On September 4, 2025, the District Court granted the District Court MTD, entering an order [Dist. Ct. Dkt. No. 48] (the "Dismissal Order") and a memorandum

opinion [Dist. Ct. Dkt. No. 49] (the "Dismissal Opinion").  In the Dismissal Opinion, the District Court correctly "concludes that the Amended Order is interlocutory, not final" based on the plain language of the Amended Order contemplating further briefing and discovery necessary to "resolve 'all remaining issues related to the [Stay Violation Motion],'" and that "[b]ecause the Amended Order does not resolve all issues as to the Stay Violation Motion, it would not be considered final if it had been issued in the course of ordinary civil litigation."  Dismissal Opinion at 4.  The Dismissal Opinion further explains that the appeal fails to satisfy the requirement under 28 U.S.C. § 1292(b) of materially advancing the ultimate termination of the litigation as to either the Stay Violation Motion itself or the bankruptcy proceeding. *Id.* at 5.  The District Court found "no exceptional circumstances in this case that would overcome the presumption against piecemeal litigation," and thus exercised its discretion to deny leave for a discretionary appeal under 28 U.S.C. § 158(a)(3). *Id.*  Finally, the District Court correctly concluded that the Amended Order was not a preliminary injunction because "an order enforcing the automatic stay under the Bankruptcy Code is a mechanism that is distinct from a preliminary injunction," so the provision for a direct appeal of interlocutory preliminary injunctions pursuant to 28 U.S.C. § 1292(a)(1) does not apply. *Id.*

At about the same time the City filed the District Court MTD, CWA filed a motion on April 14, 2025, seeking certification of a direct appeal of the Amended

Order to this Court [Dist. Ct. Dkt. No. 6] ("Certification Motion"), and CWA filed its opening merits brief on April 28, 2025 [Dist. Ct. Dkt. No. 13].  The City opposed the Certification Motion [Dist. Ct. Dkt. No. 12], and on May 2, 2025, sought a stay of merits briefing until the pending District Court MTD and Certification Motion were decided [Dist. Ct. Dkt. No. 15], which CWA opposed [Dist. Ct. Dkt. No. 18].  The District Court agreed with the City, and on May 13, 2025, entered an order staying merits briefing until resolution of the District Court MTD and Certification Motion.  [Dist. Ct. Dkt. No. 19].  After the District Court entered the Dismissal Order, it entered an order on September 18, 2025, denying the Certification Motion as moot.  [Dist. Ct. Dkt. No. 51].  Because CWA's appeal was properly dismissed, merits briefing never resumed and completed, and the District Court did not rule on the merits of CWA's appeal.

### D. The Instant Appeal and CWA's Attempt to Self-Help Its Way to Direct Appeal Before This Court

On September 12, 2025, CWA filed the instant appeal from the Dismissal Order [Dist. Ct. Dkt. No. 50] (the "Appeal").  The merits of the Bankruptcy Court's orders were never fully briefed to the District Court, and the Dismissal Order and Dismissal Opinion dismissed the appeal on jurisdictional grounds and did not reach the merits of the Amended Order at all.  Nevertheless, CWA's statement of issues on appeal goes well-beyond the District Court's rulings in the Dismissal Opinion, seeking this Court's review of the following issues:

1.    Did the District Court err in dismissing the Chester Water Authority's appeal of the Bankruptcy Court Orders, which prevent the Authority from issuing requests under the Pennsylvania Right to Know Law, for lack of jurisdiction?

2.    Should the Bankruptcy Court Orders be vacated because they unconstitutionally restrict the core sovereign functions of a state entity in violation of the First and Tenth Amendments, and also violate multiple provisions of the Bankruptcy Code?

Dkt. No. 17 at 2.  In other words, CWA seeks a ruling from this Court on the merits of the Bankruptcy Court's Amended Order, despite (i) its request for a direct appeal being denied, (ii) its appeal being dismissed for lack of jurisdiction, and (iii) the merits having never been briefed before the District Court, let alone fully adjudicated.

## II.    MOTION TO DISMISS

This Appeal should be dismissed for the same reasons it was dismissed by the District Court.  In addition, this Court lacks jurisdiction over an appeal from the District Court's dismissal of an appeal from the Bankruptcy Court's interlocutory order.  The Amended Order is interlocutory on its face, is not a preliminary injunction entitling CWA to direct District Court review without leave, and CWA fails to meet the standard necessary for review of an interlocutory order.  Further, CWA's new request for "vacatur" of the Bankruptcy Court's Amended Order must be rejected, as that relief is wholly inapplicable to this matter.

## A. This Court Lacks Jurisdiction Over an Appeal from the Interlocutory Amended Order

A court of appeals does not have jurisdiction to review a district court's denial of review of an interlocutory order from a bankruptcy court. *Gibson v. Kassover (In re Kassover)*, 343 F.3d 91, 94 (2d Cir. 2003). In *Kassover*, the United States Court of Appeals for the Second Circuit held that "28 U.S.C. § 1292(a)(1) does not vest us with jurisdiction to review a district court's exercise of discretion in denying leave to appeal an interlocutory order of a bankruptcy court, including injunctions, under 28 U.S.C. § 158(a)(3)." *Id.* at 92. This Court has held the same, explaining that "[t]he statutory language clearly authorizes the district courts to grant leave to hear appeals from interlocutory orders. It is equally plain that no such power is granted to the courts of appeals; rather, our jurisdiction is limited to final orders and judgments." *In re Jeannette Corp.*, 832 F.2d 43, 45 (3d Cir. 1987); *see also In re White Beauty View, Inc.*, 841 F.2d 524, 525 (3d Cir. 1988) ("[A]lthough the district court may grant leave to appeal from interlocutory orders, no such power is granted to the court of appeals—our jurisdiction is limited to final orders and judgments of the bankruptcy courts and district courts.")

Indeed, where the district court has denied leave to appeal an interlocutory order after applying the test set forth in 28 U.S.C. § 1292(b), an appellate court may review *only* whether the bankruptcy court order was interlocutory as necessary to determine whether the appellate court has jurisdiction. *See Delaney v. Messer (In re*

*Delaney)*, 110 F.4th 565, 568 (2d Cir. 2024), *cert. denied Delaney v. Messer*, 145 S. Ct. 1070, 220 L. Ed. 2d 391 (2025); *BancTexas Dallas, N.A. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 876 F.2d 8, 9 (2d Cir. 1989) ("Thus, if an order of a bankruptcy court is interlocutory, . . . we have no jurisdiction to review its merits nor to review a district court's decision to deny leave for an interlocutory appeal. However, we must review the threshold question of *whether* a bankruptcy court order is interlocutory . . . .") (emphasis in original).

The Amended Order is interlocutory on its face, directing the parties to present a scheduling order to address further discovery and briefing on the Stay Violation Motion. *See* Amended Order, ¶ 5. *See also Holber v. Portnoy*, No. 18-910, 2018 WL 1508749, at *1 (E.D. Pa. Mar. 27, 2018) (order of bankruptcy court granting injunction not final where order allowed the party to seek further relief from the bankruptcy court); *Quigley Co., Inc. v. A.C. Coleman (In re Quigley Co. Inc.)*, 323 B.R. 70, 74-75 (S.D.N.Y. 2005) (order enforcing automatic stay is interlocutory where it explicitly lays out process by which party may obtain relief from order); *Azar v. True Health Diag., LLC (In re THG Hldgs. LLC)*, No. 19-1714 (RGA), 2020 WL 1493622, at *5 (D. Del. Mar. 27, 2020) (orders enforcing the automatic stay are interlocutory) (citations omitted). There is no credible argument that the Amended Order is final rather than interlocutory, and the District Court agreed. Dismissal

Opinion at 4. Thus, this Court lacks jurisdiction over this Appeal and it must be dismissed.

### B.    The Amended Order Is Not a Preliminary Injunction

CWA focuses on the fact that the Bankruptcy Court did not "require the City to satisfy the basic requirements for injunctive relief" in entering the Amended Order, Motion to Expedite at 9, while ignoring the obvious reason that standard was not applied: an order enforcing the automatic stay is simply not a preliminary injunction. The District Court of Delaware previously addressed this issue in *THG Holdings*. There, the debtor filed an adversary proceeding asserting that a party was violating the automatic stay by withholding payments due to the debtors. *THG Holdings*, 2020 WL 1493622, at *1. The debtors sought to enforce the automatic stay and obtain a preliminary injunction. *Id.* at *3. The bankruptcy court's order only enforced the automatic stay. *Id.* The Delaware District Court recognized that an order enforcing the automatic stay is distinguishable from a preliminary injunction because the automatic stay is "self-effectuating, effective upon the filing of the bankruptcy petition." *Id.* (quoting *Gruntz v. Cnty. of Los Angeles*, 202 F.3d 1074, 1081-82 (9th Cir. 2000)).

Other courts have agreed, noting that an order enforcing the automatic stay is distinguishable from a preliminary injunction in numerous ways, including the fact that the debtor need not satisfy the typical standard for a preliminary injunction to

obtain an order enforcing the automatic stay.  *See, e.g.*, *Henry v. Assocs. Home Equity Svcs. (In re Henry)*, 266 B.R. 457, 468 (Bankr. C.D. Cal. 2001) ("The automatic stay differs from a temporary restraining order and a preliminary injunction in six ways: (1) it is automatic upon the filing of a bankruptcy petition and does not require a court order; (2) a debtor is not required to carry any burden of proof or provide any level of evidence to obtain it; (3) a creditor is not entitled to be heard, or even to be given notice, before it is imposed; (4) it requires no bond; (5) it is binding on all creditors, whether or not they have notice of it, and lack of notice is chiefly a defense to punitive damages.  Finally, the automatic stay and the discharge injunction are statutory, and are the same in every bankruptcy case filed in every court in the United States.").  Moreover, there are myriad procedural differences between enforcement of the automatic stay versus obtaining a preliminary injunction from a bankruptcy court.  *See* District Court MTD at 23-24.

The District Court agreed, finding that the Amended Order is not a preliminary injunction based on the same analysis from *THG Holdings*, and that just because the existence and enforcement of the automatic stay has the "same effect" as a preliminary injunction, the Amended Order does not meet the Third Circuit's definition of an injunction.  Dismissal Opinion at 5-6 (citing *Saudi Basic Indus. Corp. v. Exxon Corp.*, 364 F.3d 106, 110 (3d Cir. 2004) (defining an injunction as "[1] directed to a party, [2] enforceable by contempt, and [3] designed to accord or

protect 'some or all of the substantive relief sought by a complaint' *in more than a temporary fashion.*" (emphasis added)).   Because the Amended Order is interlocutory, stating that it is effective "until further order of [the Bankruptcy Court]" and contemplates further briefing, discovery, and a hearing, the District Court held that the Amended Order "cannot be considered a preliminary injunction, even in the purely practical sense."[2]  Thus, the Amended Order is not a preliminary injunction.

### C. Even If This Court Had Jurisdiction to Review the District Court's Exercise of Discretion, CWA Fails to Meet the Standard for an Interlocutory Appeal

"Interlocutory appeals are disfavored because (1) [p]ermitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system, (2) of the sensible policy of [avoiding] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, and (3) of the important purpose of promoting efficient judicial administration." *Bonilla v. City of Allentown*, No. 5:14-cv-05212, 2019 WL 1748498, at *2 (E.D. Pa. Apr. 19, 2019), appeal dismissed No. 19-3622,

---

[2]  The District Court noted that the issue of "[w]hether § 1292(a)(1) applies to appeals from injunctive orders of bankruptcy courts is an unsettled question within the Third Circuit" but declined to reach that issue since it determined the Amended Order was not a preliminary injunction.  Dismissal Opinion at 6.

2020 WL 6840675 (3d Cir. Oct. 13, 2020) (quotation omitted). Interlocutory appeals are appropriate only in exceptional circumstances. *See In re Powell,* No. 06-4085, 2006 WL 3208843, at \*2 (E.D. Pa. Nov. 3, 2006) (citations omitted); *Mata v. Eclipse Aerospace, Inc. (In re AE Liquid.)*, 451 B.R. 343, 346 (D. Del. 2011).

"The burden is on the party seeking certification to demonstrate that exceptional circumstances justify a departure from the basic policy against piecemeal litigation and of postponing appellate review until after the entry of a final judgment." *Miranda v. C.H. Robinson Co.*, No. 18-553, 2020 WL 1643694, at \*1 (E.D. Pa. Apr. 2, 2020) (quotation omitted). Even if the appellate court determines that the movant has satisfied the relevant factors, the court may deny the application in its discretion. *Id.* (citation omitted).

Section 158(a)(3) does not provide a standard governing a court's decision on whether to allow an interlocutory appeal, but courts have adopted the standard described in 28 U.S.C. § 1292(b), which provides that the court may allow an interlocutory appeal from an order where: (1) the order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion, and (3) immediate appeal from the order may materially advance the ultimate termination of the litigation. *See, e.g.*, *Powell*, 2006 WL 3208843, at \*2; *AE Liquid.*, 451 B.R. at 345 (citations omitted); *In re Frascella Enter., Inc.*, No. 08-100, 2008 WL 4155676, at \*2 (E.D. Pa. Sep. 10, 2008).

Even if CWA had filed a motion for leave to appeal under Fed. R. Bankr. P. 8004, it could not satisfy the standard for allowing an interlocutory appeal. As extensively briefed in the District Court MTD, CWA fails to meet any of the elements in this standard. *See* Dist. Ct. Dkt. No. 7 at 9-21. The District Court rejected the interlocutory appeal because CWA failed to meet the third factor: establishing that an immediate appeal from the Amended Order may materially advance the ultimate determination of the litigation. Dismissal Opinion at 5. Specifically, the District Court held that an interlocutory appeal would not eliminate the need for trial, eliminate complex issues to simplify the trial, or eliminate issues to make discovery easier or less costly as to either the Stay Violation Motion specifically or the bankruptcy proceeding more generally. Thus, CWA failed to meet the necessary standard for an interlocutory appeal.

### D.    Vacatur of the Amended Order Is Inapplicable and Inappropriate

Vacatur refers to nullifying or setting aside a judgment or order, often to eliminate its legal effect. *See Migliori v. Lehigh Cnty. Bd. of Elections*, 668 F. Supp. 3d 337, 347 (E.D. Pa. 2023) ("[T]he effect of vacatur is not equivalent to a reversal on the merits, which deprives a plaintiff of prevailing party status by, in effect, declaring that the plaintiff was never legally entitled to the relief initially obtained.") (citation omitted). The United States Supreme Court has described vacatur as follows: "the established practice of the [Supreme] Court in dealing with a civil case

from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 22, (1994) (citation omitted). "Vacatur is now therefore an 'extraordinary remedy' to be granted only in 'exceptional circumstances.'" *Microsoft Corp. v. Bristol Tech., Inc.*, 250 F.3d 152, 154 (2d Cir. 2001) (citation omitted).

Vacatur "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." *U.S. Bancorp*, 513 U.S. at 22–23 (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950)). "Vacatur may be appropriate in cases 'where a controversy presented for review has become moot due to circumstances unattributable to any of the parties.'" *U.S. Bancorp*, 513 U.S. at 23 (citation omitted). Public policy weighs against the grant of vacatur as "allow[ing] a party who steps off the statutory path to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would—quite apart from any considerations of fairness to the parties— disturb the orderly operation of the federal judicial system." *Id.* at 27.

A movant must demonstrate the right to vacatur—which is an equitable remedy and not an automatic right. *Khodara Env't, Inc. ex rel. Eagle Env't L.P. v. Beckman*, 237 F.3d 186, 194 (3d Cir. 2001). To even make an argument for vacatur,

the case must be moot and the cause of mootness must be outside of the movant's control.

Nothing about this case merits vacatur. The Amended Order is not moot and CWA has not asserted it is moot. Indeed, the automatic stay (which is statutory) and the Amended Order remain crucial to protecting the City and its assets from CWA's interference. There has been no resolution of the Stay Violation Motion, and litigation of the Stay Violation Motion remains pending before the Bankruptcy Court. There is no basis to vacate the Amended Order simply because CWA does not agree with the Bankruptcy Court's ruling, and any attempt to do so is a procedurally improper collateral attack on the merits of the Amended Order.

## III.   OPPOSITION TO MOTION TO EXPEDITE

The Motion to Expedite should be denied because this Court lacks jurisdiction to consider this Appeal and CWA has failed to establish any "exceptional reason that warrants expedition." 3d Cir. L.A.R. 4.1. Even if this Court were to reach merits briefing, which the City submits it should not, CWA's concocted constitutional harms are not even the subject of this Appeal, only the District Court's dismissal of the appeal for lack of jurisdiction. Thus, there would be no redress of this purported "harm" even if briefing was truncated. Moreover, CWA fails to provide a cogent explanation as to how it is harmed by the existence of the automatic stay, preventing

CWA from sending additional combative and threatening missives to potential participants in the RFP Process.

For these reasons, the Motion to Expedite should be denied.

## IV.    MOTION TO STAY BRIEFING

The City submits that an order setting a briefing schedule should not be entered in this matter until the Court determines whether it enjoys jurisdiction to hear this Appeal, and if so, which portions of CWA's stated issues on appeal (if any) survive this Motion to Dismiss.  Staying briefing until there is a decision on these threshold issues serves judicial economy and relieves the parties from needless briefing.

## V.    CONCLUSION

For the foregoing reasons, the City respectfully requests that this Court dismiss CWA's Appeal, deny CWA's Motion to Expedite, and stay entry of an order scheduling merits briefing until after a decision on the City's Motion to Dismiss.


Dated:  October 14, 2025          */s/ Laurel D. Roglen*
                                  Tobey M. Daluz
                                  Margaret A. Vesper
                                  Ballard Spahr LLP
                                  1735 Market Street, 51st Floor
                                  Philadelphia, PA 19103
                                  Tel:  (215) 864-8148
                                  Email: daluzt@ballardspahr.com
                                       vesperm@ballardspahr.com

                                       -and-

Matthew G. Summers
Laurel D. Roglen
Nicholas J. Brannick
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4465
Email: summersm@ballardspahr.com
       roglenl@ballardspahr.com
       brannickn@ballardspahr.com

*Attorneys for Appellee*
*City of Chester, Pennsylvania*