No. 25-2783

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

In re City of Chester, Pennsylvania

Chester Water Authority,
Appellant,

v.

City of Chester, Pennsylvania,
Appellee.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania No. 2:25-cv-1114 (Perez, J.),
Dismissing on Jurisdictional Grounds from Bankr. Case No. 22-13032 (Chan, J.)

## APPELLEE'S REPLY IN SUPPORT OF MOTION TO
## DISMISS APPEAL FOR LACK OF JURISDICTION

Tobey M. Daluz
Margaret A. Vesper
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 864-8148
Email: daluzt@ballardspahr.com
        vesperm@ballardspahr.com

Matthew G. Summers
Laurel D. Roglen
Nicholas J. Brannick
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4465
Email: summersm@ballardspahr.com
        roglenl@ballardspahr.com
        brannickn@ballardspahr.com

October 31, 2025          *Counsel for Appellee City of Chester, Pennsylvania*

Appellee City of Chester, Pennsylvania (the "City") files this reply (the "Reply") in support of *Appellee's Motion to Dismiss Appeal for Lack of Jurisdiction and Opposition to Motion to Expedite Briefing* [Dkt. No. 21] (the "Motion to Dismiss"),[1] and in response to the *Response to Jurisdictional Question* (the "Jurisdictional Brief") [Dkt. No. 22] and *Opposition to Motion to Dismiss* ("Opposition") [Dkt. No. 24] filed by Appellant Chester Water Authority ("CWA").

CWA's Jurisdictional Brief and Opposition repeat the same three arguments: (i) the Stay Enforcement Order is a preliminary injunction, ignoring the legal and factual differences between the automatic stay and an injunction, (ii) the facially interlocutory Stay Enforcement Order entered by the Bankruptcy Court is final, and (iii) this Court should ignore these jurisdictional infirmities and CWA's refusal to litigate the matter to conclusion in the Bankruptcy Court by treating this Appeal as a writ of mandamus. Each of these arguments should be rejected.

Although the merits of the Stay Enforcement Order are not properly before this Court, given CWA's repeated efforts to argue its ever-evolving Constitutional grievances, it is important to remember how we got here. CWA claims the central issue is "whether a Bankruptcy Court may 'reorganize Pennsylvania's political subdivisions,'" quoting only its own prior pleading and nothing from the Bankruptcy

---

[1] Capitalized terms used but not defined herein have the meanings given in the Motion to Dismiss.

Court. Opposition at 9. The Bankruptcy Court did no such thing. In fact, CWA sent incendiary and threatening letters to potential bidders in the City's ongoing sale process to sabotage that process, which the Bankruptcy Court found is a clear violation of the automatic stay. CWA is fighting to resume that effort, not vindicate any fundamental rights.

This Court lacks jurisdiction over this Appeal and CWA is not entitled to mandamus relief, therefore this Appeal should be dismissed.

## I. The Stay Enforcement Order Is Not a Preliminary Injunction.

As the District Court correctly held, the Stay Enforcement Order is not an injunction. *See* Dismissal Opinion at 5-6.

CWA misconstrues the Dismissal Order, suggesting that the District Court only found that the Stay Enforcement Order was not an injunction because it was temporary. Jurisdictional Brief at 6. That is false. The District Court correctly concluded that the Stay Enforcement Order is not an injunction because "[a]n order enforcing the automatic stay under the Bankruptcy Code is a mechanism that is distinct from a preliminary injunction." Dismissal Opinion at 5. In applying *In re THG Holdings LLC*, No. 19-11689 (JTD), 2020 WL 1493622 (D. Del. Mar. 27, 2020), the District Court noted that "the automatic stay is self-effectuating by statute and is merely enforced by the court, while an injunction is imposed by the court if it determines that the movant has satisfied the necessary elements." *Id.* at 6.

The District Court further concluded that the Stay Enforcement Order does not have the "practical effect" of an injunction under *Saudi Basic Industrial Corp. v. Exxon Corp.*, 364 F.3d 106, 110 (3d Cir. 2004). *Id.* The Stay Enforcement Order was clearly interlocutory because it was "effective 'until further order of [the Bankruptcy Court],'" so the District Court found that the Stay Enforcement Order "cannot be considered a preliminary injunction, even in the purely practical sense" because additional filings and a further hearing on the Stay Violation Motion "is underway in the Bankruptcy Court." *Id.* CWA's failure to litigate the Stay Enforcement Motion to conclusion cannot transmute the Stay Enforcement Order into an injunction.

## II.    The Stay Enforcement Order Is Interlocutory.

CWA intertwines its arguments on the finality of the Stay Enforcement Order with case law regarding injunctions. CWA relies on the purported finality of the non-existent "preliminary injunction" to conclude that portion of the order is final and not included in "all remaining issues" subject to a further hearing. Stay Enforcement Order at ¶ 5.

None of CWA's contortions change the fact that the Stay Enforcement Order is interlocutory. Paragraph 4 of the Stay Enforcement Order prohibits CWA from sending further stay-violating RTKL Requests "[u]ntil further order of this Court," and paragraph 5 provides that "[t]he City and CWA shall submit a scheduling order

that addresses any further briefing and discovery necessary to resolve all remaining issues related to the [Stay Violation] Motion." *Id.* at ¶¶ 4&5. The parties indeed agreed to two scheduling orders for the Stay Violation Motion, contemplating discovery, briefing, and a further hearing. Bk. Dkt. Nos. 781 & 816. But CWA derailed that process by resisting discovery and pursuing this Appeal rather than a final order. CWA cannot manufacture finality by its own delay. *See Kiviti v. Bhatt*, 80 F.4th 520, 526 (4th Cir. 2023), *cert. denied,* 144 S. Ct. 2519, 219 L. Ed. 2d 1200 (2024) ("The thing is, we don't allow parties to manufacture finality like this . . . [we reject] clever gambits aimed at eroding the statutory line between us and plenary review.").

Although "finality is construed more flexibly in bankruptcy appeals than ordinary civil appeals," the District Court correctly applied Third Circuit law to conclude that the Stay Enforcement Order "does not involve the kind of circumstances unique to bankruptcy proceedings" that would merit deviating from the "traditional, less flexible standard of finality." Dismissal Opinion at 3-4.

CWA cites *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 589 U.S. 35 (2020), to suggest there is a "trend in recent cases" that changes the finality analysis. Opposition at 7. However, nothing about *Ritzen* compels a similar conclusion here. First, *Ritzen* involved a motion for relief from the automatic stay, not a motion to **enforce** the automatic stay. *Ritzen*, 589 U.S. at 40. CWA never sought relief from

the automatic stay, choosing instead to ignore its existence and send the stay-violating RTKL Requests, so the motion at issue here differs from *Ritzen*.  Second, the order denying stay relief in *Ritzen* was unequivocally final because "[t]he court's order ended the stay-relief adjudication and left nothing more for the Bankruptcy Court to do in that proceeding" yielding "a final, appealable order when the bankruptcy court unreservedly grants or denies relief."  *Id.* at 38 & 47.  The *Ritzen* Court noted that "[s]ection 158(a) asks whether the order in question terminates a procedural unit separate from the remaining case . . . ."  *Id.* at 46.  Unlike the dispositive order in *Ritzen* "unreservedly" denying the requested stay relief, the Stay Enforcement Order does the opposite, and reserves "all remaining issues" for a "further hearing" following discovery and briefing.  Stay Enforcement Order at ¶¶ 4&5.  That can hardly be construed as "end[ing] the . . . adjudication and [leaving] nothing more for the Bankruptcy Court to do in that proceeding." *Ritzen*, 589 U.S. 47.

CWA's reliance on this Court's recent ruling in *In re Aikens* fares no better. Case No. 24-1695, 2025 WL 560625 (3d Cir. Feb. 18, 2025).  In *Aikens*, an appeal from an order granting stay relief was dismissed as moot because the underlying chapter 7 case had already concluded.  *Id.* at *1-2.  CWA cites *Aikens* for the proposition that the "grant of relief from automatic stay was immediately appealable," Opposition at 7, but *Aikens* contains no analysis on the subject and

simply applies *Ritzen* in a footnote.  Even if it did, just as with *Ritzen*, it is inapposite because the Bankruptcy Court did not consider a stay relief motion and certainly did not enter what could be considered a final order given the contemplated discovery, briefing, and hearing.  There is nothing in *Ritzen* or *Aikens* to suggest a facially interlocutory order contemplating further adjudication by the Bankruptcy Court is a final, appealable order.  In fact, the *Ritzen* Court suggests exactly the opposite, stating "[w]e do not decide whether finality would attach to an order denying stay relief if the bankruptcy court entered it 'without prejudice' because further developments might change the stay calculus."  *Ritzen*, 589 U.S. at 47 n.4.

CWA has articulated no reason to ignore the plain language of the Stay Enforcement Order or to eschew the finality standard that renders the Stay Enforcement Order interlocutory.  CWA's apparent desire to have any court other the Bankruptcy Court exempt CWA from application of the automatic stay does not excuse it from having to first actually litigate the Stay Violation Motion to a final order, which has not yet happened.  Litigation of the Stay Enforcement Motion to its conclusion "might change the stay calculus," rendering the Stay Enforcement Order interlocutory.

The Stay Enforcement Order is interlocutory, so this Court lacks jurisdiction over this Appeal.

### III.    CWA's Request for Extraordinary Mandamus Relief Must Be Denied.

This Court should not treat this improper Appeal as a writ of mandamus. "On infrequent occasions when no other remedy was available, a petition for this extraordinary writ has been granted to review a stay order issued in a clear abuse of discretion." *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 736 (3d Cir. 1983). However, "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). "[I]ssuance of writs of mandamus in aid of appellate jurisdiction has been limited strictly. It is limited to those exceptional cases where the inferior court acted wholly without jurisdiction or so clearly abused its discretion as to constitute usurpation of power." *In re Dalton*, 733 F.2d 710, 716 (10th Cir. 1984). *See also Aguilar v. Walgreen Co.*, 47 F.4th 1115, 1122 (9th Cir. 2022) (same).

Given this framework, the standard for mandamus relief is rigorous. "To obtain mandamus relief, the petitioner must establish both that there is (1) no other adequate means to attain the relief sought, and (2) a right to the writ that is clear and indisputable. Even if the petitioner satisfies both prerequisites, our decision to issue the writ remains discretionary." *In re Baldwin*, 700 F.3d 122, 127 (3d Cir. 2012) (citations omitted). When contemplating an interlocutory order, where there is an obvious and natural avenue for later redress, courts are even more circumspect in meting out mandamus relief. *See Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828

F.2d 1385, 1392 n.16 (9th Cir. 1987) ("[M]andamus is available to review interlocutory orders in bankruptcy proceedings in those extraordinary cases where a bankruptcy appellant in the district court is threatened with irreparable harm and there are no other means, including the eventual appeal, to protect himself from this harm." (citation omitted)); *see also Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1071 (3d Cir. 1983) ("While a simple showing of error might be sufficient to obtain a reversal on a direct appeal, a writ of mandamus issued under such circumstances would undermine the settled limitations upon the power of an appellate court to review interlocutory orders." (citations omitted)).

CWA agrees on the applicable three-condition standard, Jurisdictional Brief at 16 (citing *Cheney v. United States Dist. Ct.*, 542 U.S. 367 (2004)), each of which it fails to meet.

First, CWA's suggestion that absent this extraordinary writ, "the Authority has no means of obtaining relief" from the Stay Enforcement Order is categorically false. Jurisdictional Brief at 16. The Stay Enforcement Order itself contemplates that the relief granted therein, which CWA claims is so problematic, will last "[u]ntil further order of this [Bankruptcy] Court," and contemplates "a scheduling order that addresses any further briefing and discovery necessary to resolve all remaining issues related to" the Stay Violation Motion. Stay Enforcement Order at ¶¶ 4&5. There is a ready and obvious forum for adjudicating this matter: the Bankruptcy

Court. All CWA has to do is propose an updated scheduling order and hearing date, but it has simply chosen not to do so. Thus, CWA fails to meet the first condition for entitlement to a writ.

Second, CWA has failed to establish that the Bankruptcy Court's entry of the Stay Enforcement Order was a "clear and indisputable" abuse of its discretion or outside of its jurisdiction. The automatic stay is one of the most central tenets of U.S. bankruptcy law, providing a debtor with a necessary breathing spell to pursue a reorganization. *Midlantic Nat'l Bank v. N.J. Dep't of Envt'l Prot.*, 474 U.S. 494, 503 (1986) ("The automatic stay provision of the Bankruptcy Code, § 362(a), has been described as 'one of the fundamental debtor protections provided by the bankruptcy laws.'"). CWA's rhapsodizing about sovereignty and federalism notwithstanding, the automatic stay applies with equal force to all private and governmental entities, including the federal government, states, municipalities, and political subdivisions. *In re Nortel Networks, Inc.* 669 F.3d 128, 137 (3d Cir. 2011) (noting that the filing of a bankruptcy petition "imposes a broad automatic stay" that applies to "all entities"). An order enforcing the automatic stay is well within the jurisdiction of a bankruptcy court and is not "'squarely inconsistent' with Supreme Court precedent," nor does it "lie[] far outside the bounds of established . . . law." Opposition at 16-17. Moreover, CWA's arguments here rely again on its insistence that the Stay Enforcement Order is an injunction, which it is not. In doing so, CWA

argues it is unfair that it must "risk[s] contempt sanctions for speech that may ultimately, after full appellate review, be found constitutionally protected." Opposition at 19. But CWA still misunderstands the automatic stay. Even if this Court were to utilize mandamus to vacate the Stay Enforcement Order (which it should not), CWA would still be equally bound by the automatic stay and face the risk of damages and sanctions for any such violations as provided by the statute.

CWA dresses up this procedurally-defective Appeal as an attempt to vindicate its fundamental rights. The problem is that those rights do not exist. CWA fancies itself immune from the automatic stay as a municipal authority, but the Supreme Court has rejected that theory. *See Lac du Flambeau Band of Lake Sup. Chippewa Indians v. Coughlin*, 599 U.S. 382, 383 (2023) ("The abrogation provision in § 106(a) in turn applies to every 'governmental unit' in § 101(27)."). *See also Olsen v. Deutscher (In re Nashville White Trucks, Inc.)*, 731 F.2d 376, 377-78 (6th Cir. 1984) (Tenth Amendment did not relieve state from application of automatic stay to prevent collection of taxes from debtor). CWA claims that municipal authorities that have not filed chapter 9 petitions are nevertheless protected by certain sections of the Bankruptcy Code, but the Supreme Court has rejected such arguments. *United States v. Bekins*, 304 U.S. 27, 51 (1938) (quoting Sen. Rep. No. 911, 75th Cong., 1st Sess.). CWA complains that the Stay Enforcement Order is a prior restraint on CWA's free speech rights, but every court to have considered whether municipal

authorities have such rights has rejected the proposition. *Student Gov't Ass'n v. Bd. of Tr. of the Univ. of Mass.*, 868 F.2d 473, 482 n.10 (1st Cir. 1989); *Serra v. U.S. Gen. Servs. Admin.*, 847 F.2d 1045, 1048 (2d Cir. 1988); *Muir v. Ala. Educ. Television Comm'n*, 688 F.2d 1033, 1038 n.12 (5th Cir. 1982) (en banc); *N.M. v. McAleenan*, 450 F. Supp. 3d 1130, 1209 (D.N.M. 2020) (citing *NAACP v. Hunt*, 891 F.2d 1555, 1565 (11th Cir. 1990)).  Dismissing this Appeal will not deprive CWA of any rights that actually exist.

Failing to meet the first two conditions dooms CWA's mandamus request, and CWA's desire to send more offensive letters is not an "extraordinary" reason for this Court to exercise its discretion to the contrary.

## IV.    Conclusion

For the foregoing reasons, this Court lacks jurisdiction over this Appeal and this Court should not exercise its discretion to treat the Appeal as a writ of mandamus.  This Appeal should be dismissed.

Dated:  October 31, 2025        */s/ Laurel D. Roglen*
　　　　　　　　　　　　　　　　Tobey M. Daluz
　　　　　　　　　　　　　　　　Margaret A. Vesper
　　　　　　　　　　　　　　　　Ballard Spahr LLP
　　　　　　　　　　　　　　　　1735 Market Street, 51st Floor
　　　　　　　　　　　　　　　　Philadelphia, PA 19103
　　　　　　　　　　　　　　　　Tel:  (215) 864-8148
　　　　　　　　　　　　　　　　Email: daluzt@ballardspahr.com
　　　　　　　　　　　　　　　　　　　vesperm@ballardspahr.com

-and-

Matthew G. Summers
Laurel D. Roglen
Nicholas J. Brannick
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4465
Email: summersm@ballardspahr.com
        roglenl@ballardspahr.com
        brannickn@ballardspahr.com

*Attorneys for Appellee*
*City of Chester, Pennsylvania*