No. 25-2783

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

IN RE: CITY OF CHESTER, PENNSYLVANIA,

*Debtor.*

CHESTER WATER AUTHORITY,

*Appellant,*

v.

CITY OF CHESTER, PENNSYLVANIA,

*Appellee.*

On Appeal from the United States District Court for the
Eastern District of Pennsylvania, No. 2:25-cv-1114 (Perez, J.)
Bankr. Case No. 22-13032 (Chan, J.)

## BRIEF FOR APPELLANT

Kevin Dooley Kent
Cynthia M. Filipovich
Andrew K. Garden
CLARK HILL PLC
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8531
kkent@clarkhill.com
cfilipovich@clarkhill.com
agarden@clarkhill.com

Jeffrey M. Harris
Rachael C.T. Wyrick
Julius Kairey
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
Telephone: (703) 243-9423
jeff@consovoymccarthy.com
rachael@consovoymccarthy.com
julius@consovoymccarthy.com

January 7, 2026

*Counsel for Appellant Chester Water Authority*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................ii

INTRODUCTION ...............................................................................................1

STATEMENT OF JURISDICTION ......................................................................3

STATEMENT OF THE ISSUES ...........................................................................4

STATEMENT OF RELATED CASES....................................................................5

STATEMENT OF THE CASE .............................................................................5

    I.     The Authority's History and Operations.............................................5

    II.    The Ongoing State Court Dispute Between the Authority and the City........7

    III.   The City Commences a Chapter 9 Bankruptcy Case........................................9

    IV.   The Bankruptcy Court Enjoins the Authority from Issuing RTKL
          Requests...............................................................................................11

    V.    The District Court Dismisses the Authority's Appeal of the Bankruptcy
          Court's Orders.....................................................................................14

SUMMARY OF THE ARGUMENT.....................................................................16

STANDARD OF REVIEW ..................................................................................18

ARGUMENT........................................................................................................19

    I.     The District Court had Jurisdiction Over the Authority's Appeal. ...............19

         A.    The Bankruptcy Court's Orders Were Final .......................................20

         B.    The Bankruptcy Court's Orders Were an Appealable Preliminary
             Injunction...................................................................................25

    II.    The Court Should Vacate the Bankruptcy Court's Orders............................31

         A.    The Bankruptcy Court's Orders Violate the Tenth Amendment
             and Chapter 9 of the Bankruptcy Code ...................................33

         B.    The Bankruptcy Court's Orders Violate Section 541 of the
             Bankruptcy Code .......................................................................38

          C.    The Bankruptcy Court's Orders Violate the First Amendment........42

    III.   If this Court Determines that it Lacks Appellate Jurisdiction, it Should
          Exercise its Mandamus Jurisdiction and Vacate the Orders Below ..............46

CONCLUSION .....................................................................................................50

COMBINED CERTIFICATIONS.........................................................................52

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Perez,*
  585 U.S. 579 (2018)................................................................27

*Alexander v. United States,*
  509 U.S. 544 (1993)........................................................... 43, 48

*Aljabri v. bin Salman,*
  106 F.4th 1157 (D.C. Cir. 2024) .........................................31

*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n,*
  576 U.S. 787 (2015).............................................................33

*Bacon v. City of Richmond, Va.,*
  475 F.3d 633 (4th Cir. 2007)..............................................33

*Bartok v. DeAngelis,*
  2012 WL 664928 (D.N.J. Feb. 29).....................................27

*Butner v. United States,*
  440 U.S. 48 (1979) ......................................................... 39, 40

*Cheney v. U.S. Dist. Court,*
  542 U.S. 367 (2004)..................................................... 4, 19, 46

*Chester Water Auth. v. Pennsylvania Dep't of Cmty. & Econ. Dev.,*
  249 A.3d 1106 (Pa. 2021) ...................................................11

*Citizens United v. FEC,*
  558 U.S. 310 (2010).............................................................45

*Cnty. of Suffolk v. Long Island Lighting Co.,*
  710 F. Supp. 1387 (E.D.N.Y. 1989) ...................................45

*Cty. of Allegheny v. Moon Twp. Mun. Auth.,*
  671 A.2d 662 (Pa. 1996) .....................................................41

*Del. State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.,*
  108 F.4th 194 (3d Cir. 2024)...............................................49

*Delaware Strong Families v. A.G. of the State of Delaware,*
  793 F.3d 304 (3d Cir. 2015) ................................................19

*Department of Education v. California,*
  604 U.S. 650 (2025)....................................................... 30, 31

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991) ................................................................................. 34, 37

*Holt Civic Club v. City of Tuscaloosa,*
    439 U.S. 60 (1978) ................................................................................... 37, 47

*In re A.H.,*
    999 F.3d 98 (2d Cir. 2021) .............................................................................47

*In re AGR Premier Consulting, Inc.,*
    550 F. App'x 115 (3d Cir. 2014) ............................................................... 28, 29

*In re Aikins,*
    2025 WL 560625 (3d Cir. Feb. 20) ...............................................................21

*In re Arthur Treacher's Franchise Litig.,*
    689 F.2d 1150 (3d Cir. 1982) .......................................................................30

*In re Asbestos Sch. Litig.,*
    46 F.3d 1284 (3d Cir. 1994) ..........................................................47, 48, 49

*In re Bankr. Appeal of Allegheny Health, Educ. & Res. Found.,*
    252 B.R. 332 (Bankr. W.D. Pa. 1999) ...................................................... 20, 23

*In re Byju's Alpha, Inc.,*
    2024 WL 3487793 (D. Del. July 18) ...............................................................26

*In re Chateaugay Corp.,*
    876 F.2d 8 (2d Cir. 1989) ..............................................................................4

*In Re Chester Water Auth. Tr.,*
    263 A.3d 689 (Pa. Commw. Ct. 2021) ..................................................... 41, 42

*In re Chester Water Auth. Tr.,*
    276 A.3d 203 (Pa. 2022) ...........................................................................8, 41

*In re Chester Water Auth. Tr.,*
    Nos. 46-53 MAP (Pa.) ....................................................................................9

*In re City of Harrisburg, Pa.,*
    465 B.R. 744 (Bankr. M.D. Pa. 2011) ............................................................36

*In re Colon,*
    941 F.2d 242 (3d Cir. 1991) .........................................................................20

*In re Datesman,*
    1999 WL 608856 (Bankr. E.D. Pa. Aug. 9) ....................................................38

*In re Delaney,*
    110 F.4th 565 (2d Cir. 2024) ................................................................. 3, 4, 20

*In re F.C.C.*,
  217 F.3d 125 (2d Cir. 2000) ............................................................... 46

*In re Forman Enters., Inc.*,
  273 B.R. 408 (Bankr. W.D. Pa. 2002) ............................................... 41

*In re Jefferson Cnty.*,
  474 B.R. 228 (Bankr. N.D. Ala. 2012) ......................................... 39, 40

*In re Lomas Fin. Corp.*,
  932 F.2d 147 (2d Cir. 1991) ............................................................... 21

*In re Marvel Ent. Grp., Inc.*,
  209 B.R. 832 (Bankr. D. Del. 1997) ........................................... 20, 25

*In re Midstate Mortg. Invs. Grp., LP*,
  2006 WL 3308585 (D.N.J. Nov. 6) ............................................. 27, 29

*In re Mkt. Sq. Inn, Inc.*,
  978 F.2d 116 (3d Cir. 1992) ............................................................... 22

*In re Nw. Corp.*,
  319 B.R. 68 (Bankr. D. Del. 2005) ............................................... 22, 24

*In re Ozark Mountain Solid Waste Dist.*,
  No. 3:14-bk-70017, 2014 WL 7494926 (Bankr. W.D. Ark. Aug. 5) ......... 37

*In re Peer St., Inc.*,
  2025 WL 894497 (D. Del. Mar. 24) ................................................... 20

*In re Philadelphia Newspapers, LLC*,
  599 F.3d 298 (3d Cir. 2010) ............................................................... 19

*In re Pro. Ins. Mgmt.*,
  285 F.3d 268 (3d Cir. 2002) ....................................................... 15, 25

*In re THG Holdings LLC*,
  2020 WL 1493622 (D. Del. Mar. 27) ................................................. 29

*In re United States*,
  945 F.3d 616 (2d Cir. 2019) ....................................................... 48, 50

*In re World Imports Ltd.*,
  820 F.3d 576 (3d Cir. 2016) ....................................................... 15, 25

*Kannikal v. Att'y Gen.*,
  776 F.3d 146 (3d Cir. 2015) ............................................................... 32

*Mariana v. Fisher*,
  338 F.3d 189 (3d Cir. 2003) ............................................................... 45

*Matter of Subpoena 2018R00776*,
   947 F.3d 148 (3d Cir. 2020) ................................................................ 43, 48

*Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*,
   239 F.3d 172 (2d Cir. 2001) ....................................................................... 49

*Miller v. Mitchell*,
   598 F.3d 139 (3d Cir. 2010) ....................................................................... 30

*Mirza v. Ins. Adm'r of Am., Inc.*,
   800 F.3d 129 (3d Cir. 2015) ....................................................................... 32

*Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*,
   701 F. Supp. 2d 568 (S.D.N.Y. 2010) ....................................................... 45

*Pa. Envt'l. Def. Found. v. Commonwealth*,
   161 A.3d 911 (Pa. 2017) ............................................................................ 35

*Pleasant Grove City, Utah v. Summum*,
   555 U.S. 460 (2009) ................................................................................... 45

*Ramara, Inc. v. Westfield Ins. Co.*,
   814 F.3d 660 (3d Cir. 2016) ....................................................................... 27

*Rankin v. Chester Municipal Authority*,
   68 A.2d 458 (Pa. Super. 1949) ..................................................................... 6

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015) ................................................................................... 44

*Richardson Greenshields Sec., Inc. v. Lau*,
   825 F.2d 647 (2d Cir. 1987) ....................................................................... 46

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
   589 U.S. 35 (2020) ..................................................................................... 21

*Sable v. Velez*,
   388 F. App'x 235 (3d Cir. 2010) ................................................................ 19

*Saudi Basic Indus. Corp. v. Exxon Corp.*,
   364 F.3d 106 (3d Cir. 2004) ......................................................... 16, 27, 29

*Schuette v. BAMN*,
   572 U.S. 291 (2014) ............................................................................ 38, 47

*Soltane v. U.S. Dep't of Just.*,
   381 F.3d 143 (3d Cir. 2004) ....................................................................... 19

*Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.*,
   335 F.3d 235 (3d Cir. 2003) ....................................................................... 30

*United States v. Bekins,*
    304 U.S. 27 (1938) ................................................................36

*United States v. Nicolet, Inc.,*
    857 F.2d 202 (3d Cir. 1988) ...............................................22

*Wayne Cnty. Neighborhood Legal Servs. v. Nat'l Union Fire Ins. Co.,*
    971 F.2d 1 (6th Cir. 1992) ..................................................32

*Wright v. Elton Corp.,*
    2021 WL 5822306 (3d Cir. Dec. 7) .....................................28

## Constitutional Provisions

Pa. Const. art. I, §27 ................................................................35

U.S. Const. amend. X. ...........................................................33

U.S. Const. art. I, §8..............................................................36

## Statutes, Rules and Regulations

11 U.S.C. §362(a)(3) ..............................................................38

11 U.S.C. §541(a) ..................................................................38

11 U.S.C. §901(a) ..................................................................39

28 U.S.C. §1292(a)(1) ...............................................2, 15, 17, 26

28 U.S.C. §158(c)(2) ..............................................................26

28 U.S.C. §158(d)(1)............................................................3, 31

28 U.S.C. §1651(a)...............................................................3, 4

53 Pa.C.S. §5610(a.1) ..............................................................7

53 Pa.C.S. §5612(a.1) ..............................................................7

53 Pa.C.S. §5617 ....................................................................34

65 P.S. §§67.101-67.3104 .......................................................11

65 P.S. §§67.102 ...................................................................35

65 P.S. §67.501 .....................................................................35

Pennsylvania Act of June 28, 1935, P.L. 463, No. 191, §7 ...............7

## Other Authorities

City of Chester, Delaware County, Pennsylvania, Request for Qualifications for
    Proposed Sale, Lease, or Other Monetization of Chester's Water Assets,

Stormwater Assets, and Reversionary Interest in Certain Sewer Assets (Nov. 20, 2024), perma.cc/Y8CW-Z5GK ............................................................... 10, 11

Federal Judicial Center, *Navigating Chapter 9 of the Bankruptcy Code* (2017) ..................... 37

**INTRODUCTION**

The City of Chester, Pennsylvania, which has suffered from decades of financial mismanagement, filed a Chapter 9 bankruptcy petition on November 10, 2022. In an affront to state sovereignty, and a flagrant abuse of the federal bankruptcy laws, the City is attempting to use bankruptcy proceedings to reorganize and dissolve the multi-jurisdictional Chester Water Authority, a municipal water authority that was created in 1939 under Pennsylvania state law. Under state law, the Authority is an independent entity of Pennsylvania, not a creature of the City. It provides the vast majority of its service to customers outside the City, funds itself through ratepayer revenue and bond/bank financing rather than any financing or contributions by the City, and has six of its nine board members appointed by Chester and Delaware Counties, with only three appointed by the City.

Bankruptcy law is meant to assist entities in financial distress by allowing them to reorganize themselves, while at the same time protecting their assets from litigation while bankruptcy proceedings are ongoing. But, here, the City is using these proceedings to obtain assets that do not belong to it, thereby posing a grave threat to the Authority and the hundreds of thousands of ratepayers who rely on it daily for clean water. And these proceedings pose a threat to our country's federal structure as well: The City is attempting to use the powers of a federal court to cause the restructuring of state government.

1

The Authority sought to learn about the City's efforts to dissolve it and sell off its assets using Pennsylvania's Right to Know Law. But the Bankruptcy Court, at the City's urging, prohibited the Authority from issuing requests under that law, finding that they violated the automatic stay. The Bankruptcy Court issued two orders that have the effect of a preliminary injunction. *See* Appx1-4 (the "Bankruptcy Court's Orders"). This injunction prevents the Authority from exercising its governmental powers to investigate a bidding process being run for the benefit of the City in its attempt to seize and sell off the Authority's assets.

The Authority appealed the Bankruptcy Court's Orders to the District Court. But the District Court dismissed the Authority's appeal. It refused to allow a discretionary appeal under 28 U.S.C. §158(a)(3), and held that the Bankruptcy Court's Orders were (1) nonfinal and (2) not an injunction appealable as of right under 28 U.S.C. §1292(a)(1).

This Court should reverse. Under this Court's precedent, the Bankruptcy Court's Orders are an injunction that the Authority had a right to appeal to the District Court. The District Court's dismissal of the Authority's appeal flouted that precedent, denying the Authority appellate review of Orders causing ongoing prejudice to its ability to learn about the City's attempt to seize and sell its assets.

On the merits, this Court should vacate the Orders. They infringe on state sovereignty in violation of the Tenth Amendment, are contrary to the Bankruptcy Code, and constitute an unlawful prior restraint on the Authority's speech in violation of the

First Amendment. The District Court's errors are sufficiently manifest that, even if this Court cannot exercise ordinary appellate jurisdiction, it should exercise its mandamus jurisdiction under 28 U.S.C. §1651(a) to correct the errors below.

## STATEMENT OF JURISDICTION

The Authority appeals from the District Court's dismissal of its appeal of two orders of the Bankruptcy Court. *See Chester Water Auth. v. City of Chester, Pa.*, No. 2:25-cv-01114, 2025 WL 2608621, at *4 (E.D. Pa. Sept. 4) (Appx5-11, 16). Under Section 158(d)(1), "'[t]he courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees' of district courts reviewing decisions of bankruptcy courts." *In re Delaney*, 110 F.4th 565, 567 (2d Cir. 2024) (quoting 28 U.S.C. §158(d)(1)). The District Court entered a final judgment dismissing the Authority's appeal of the Bankruptcy Court's Orders. *See* Appx16. The parties have already extensively briefed the question of this Court's jurisdiction, in response to both a clerk order and the City's motion to dismiss. *See* Docs. 20-22, 24-25.[1] A motions panel referred the question of jurisdiction for decision by the merits panel. *See* Doc. 26.

This Court has jurisdiction, at a minimum, to determine whether the Bankruptcy Court's Orders were interlocutory, and thus whether the District Court properly dismissed the Authority's appeal. The City conceded as much in its motion to dismiss the case for lack of jurisdiction. *See* Doc. 21 at 11 (agreeing that this Court may review

---

[1] The Authority incorporates herein the arguments it made in its earlier submissions.

"whether the bankruptcy court order was interlocutory as necessary to determine whether [it] has jurisdiction") (citing *Delaney*, 110 F.4th at 568; *In re Chateaugay Corp.*, 876 F.2d 8, 9 (2d Cir. 1989)). And as explained *infra*, both this Court and the District Court have jurisdiction over this appeal because the Bankruptcy Court's Orders were a final and appealable preliminary injunction, not a nonfinal decision as the District Court erroneously concluded.

The All Writs Act separately gives federal courts jurisdiction to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a). "The traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine the court against which mandamus is sought to a lawful exercise of its prescribed jurisdiction." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004) (cleaned up). Three conditions must be met for the writ to issue: (1) the petitioner must "have no other adequate means to attain the relief [it] desires"; (2) "the petitioner must satisfy the burden of showing that [its] right to issuance of the writ is clear and indisputable"; and (3) the issuing court "must be satisfied that the writ is appropriate under the circumstances." *Id.* at 380-81 (cleaned up).

## STATEMENT OF THE ISSUES

1.     Whether the District Court erred in dismissing the Authority's appeal for lack of jurisdiction.

2.      Whether the Bankruptcy Court's Orders prohibiting the Authority from issuing requests under the Right to Know Law should be vacated because they violate the Tenth Amendment, Bankruptcy Code, and First Amendment.

3.      Whether, if the Court lacks ordinary appellate jurisdiction over this appeal, it should exercise mandamus jurisdiction and vacate the Bankruptcy Court's Orders.

## STATEMENT OF RELATED CASES

The instant case has not previously been before this Court. The following matters in the Eastern District of Pennsylvania are appeals from the same bankruptcy case that present some of the issues raised here: *In re City of Chester, Pennsylvania*, Nos. 2:25-cv-1115, 2:25-cv-2136, and 2:25-cv-6085.

## STATEMENT OF THE CASE

### I.   The Authority's History and Operations

When the Authority was incorporated in 1939, most of its users and property were located within the municipal limits of the City of Chester. The Authority has substantially expanded since then and today serves approximately 200,000 people and businesses across 37 municipalities throughout Chester and Delaware counties. Appx449. The Authority also provides water to ratepayers in Maryland and Delaware. Appx147. Nearly 80% of the Authority's users are now located outside the City's jurisdiction, as are significant real property and physical infrastructure assets of the Authority—including its source water, treatment plant, reservoir, water storage tanks, and transmission main. Appx220-221, 668. This significant system expansion has been funded almost

5

100% by ratepayer revenue and loans secured based on continued revenue from the Authority's ratepayers. Appx451-52, 723-24.

The Authority is operationally and fiscally sound. Appx147. It is a perennial recipient of industry water quality awards, and its water consistently meets or exceeds all governmental testing criteria. *Id.* Regular maintenance activities and capital project initiatives are actively implemented to ensure the Authority's assets remain in excellent condition. The Authority has an actuarially sound pension and exemplary customer satisfaction ratings. *Id.* These factors underpin the Authority's hallmark of providing high-quality water to its users at some of the lowest rates in the area.

The City neither made any financial contribution to, nor obtained any security interest in, the Authority or its assets at its inception. Instead, upon its formation, the entity alone financed its acquisition of an existing water system that became the Authority. The early financing and infrastructure development of the Authority is recited in detail in *Rankin v. Chester Municipal Authority*, 68 A.2d 458 (Pa. Super. 1949). *Rankin* explains that when the Authority was created in 1939, "it purchased the properties and franchises of the Chester Water Service Company." *Id.* at 461. "The Authority possessed no taxing power. It could not pledge its assets to secure a loan; it could offer to prospective bondholders only the security of future net revenues. To finance this purchase, the Authority issued water revenue bonds in the amount of $5,910,000." *Id.* Neither the City nor any other municipality has financed or funded the Authority over the course of its existence. Today, the Authority continues to self-fund its growth and

acquisitions through ratepayer revenues and bond/bank financing in its own name, secured by the revenues from its ratepayers.

The Authority was initially governed by a five-member board appointed by the City. *See* Pennsylvania Act of June 28, 1935, P.L. 463, No. 191, §7 (repealed Municipality Authorities Act of 1935). Appx222-23. As the Authority expanded, this board composition became increasingly illogical because it failed to afford representation to the several other jurisdictions in which a large majority of the Authority's users—who generate much of the revenue funding its growth and operations—now reside. *Id.*

To correct this imbalance, the Pennsylvania General Assembly unanimously passed Act 73 of 2012 ("Act 73"), 53 Pa.C.S. §§5610(a.1) & 5612(a.1), which amended the Municipality Authorities Act to reorganize certain multi-jurisdictional entities such as the Authority to provide for equal representation for the additional jurisdictions that meet the specified criteria. Appx223. Act 73 replaced the Authority's five-member board appointed by the City with a nine-member board of which the City, Delaware County, and Chester County each appoint three members. 53 Pa.C.S. §5610(a.1)(1)(i); Appx223.

## II.     The Ongoing State Court Dispute Between the Authority and the City

The City has been in financial distress and various forms of supervision by the Commonwealth of Pennsylvania for over 30 years. And since at least 2017, the Authority has been fighting to defend its existence against the City's unlawful attempts to seize it or dissolve it. The City views a sale of the Authority as a means to pass on the costs

7

of its protracted financial mismanagement and misconduct to the Authority's ratepayers. This dispute has played out across numerous legislative and judicial forums as well as in the court of public opinion. The central question in this dispute is whether the City has the unilateral right to terminate the existence of the Authority—itself a separate and independent multi-jurisdictional municipal entity—and seize and sell its assets to pay down the City's unrelated municipal debts.

Several proceedings relevant to this question are pending, but one is critical to understanding this appeal. On April 11, 2022, the Pennsylvania Supreme Court exercised its discretion to take up the Authority's appeal of an intermediate court's decision upon which the City has relied heavily in seeking to launch a Request for Proposals ("RFP") process for the sale of the Authority's assets. Specifically, the intermediate appellate court had held that the Municipal Authorities Act vests the City with the power to acquire and dispose of the assets of the Authority without its consent.

The Pennsylvania Supreme Court accepted a discretionary appeal of that decision, which also stayed it pending further review. Specifically, the Pennsylvania Supreme Court agreed to consider whether the City of Chester has the right "to seize the assets of Chester Water Authority … and sell those assets to address its own unrelated financial distress, while overriding the representational rights granted by Act 73 … to Delaware and Chester Counties?" *In re Chester Water Auth. Tr.*, 276 A.3d 203, 204 (Pa. 2022). In the same order, the Pennsylvania Supreme Court also accepted a cross-appeal by Chester County (which is aligned with the Authority in that litigation) to similar effect.

8

Once accepted for review, the appeals were docketed as *In re Chester Water Auth. Tr.*, Nos. 46-53 MAP 2022 (Pa.). The Pennsylvania Supreme Court heard oral argument on May 14, 2025, but has yet to issue a decision.

## III.    The City Commences a Chapter 9 Bankruptcy Case

The City filed a voluntary petition for relief under Chapter 9 of the Bankruptcy Code on November 10, 2022, on the eve of oral argument in the Pennsylvania Supreme Court (which was originally scheduled for November 30, 2022). The next day, it filed a *Suggestion of Bankruptcy* in the Pennsylvania Supreme Court, which entered its own order staying the pending appeals.

The City availed itself of the automatic stay under Section 362(a) of title 11 of the U.S. Code (the "Bankruptcy Code") to gain an advantage in the municipal governance dispute that was being litigated in Pennsylvania state court. In particular, the City sought to force a bankruptcy sale of the Authority's assets before the Pennsylvania Supreme Court could complete its review of the lower court decision (which the Pennsylvania Supreme Court stayed) that endorsed the City's attempts to seize the Authority. Both the curious timing of the bankruptcy filing and the proposed disposition of the Authority under the City's *Plan for the Adjustment of Debts of the City of Chester*, dated August 26, 2024 (Appx163-215) (the "Plan"), reveal the City's intention. The Plan provides that the Authority's legal existence would be terminated and its assets would revert to the City and be sold off through an RFP process. *See* Appx200.

On September 25, 2024, the Authority filed a motion in Bankruptcy Court for an order declaring the automatic stay inapplicable to the Pennsylvania Supreme Court case, or alternatively, if the stay applied, an order lifting the stay to permit those appeals to proceed. *See* Appx216-75. The City stipulated to this relief and the Bankruptcy Court approved the stipulation on November 20, 2024. *See* Appx280-86.

Rather than waiting for the Pennsylvania Supreme Court to determine as a matter of state law whether the City has a unilateral right to seize and sell off the Authority's assets (notwithstanding the City's power to appoint only three of the nine members of the Authority's multi-jurisdictional board), the City sought to leverage its status as a Chapter 9 debtor to improve its position and undermine the Authority's rights. On the very same day the Bankruptcy Court approved the stipulation allowing the Pennsylvania Supreme Court case to proceed, the City issued a Request for Qualifications to give prospective purchasers an "opportunity to formally express their interest in bidding on a sale, lease or other form of monetization … of some or all of the [City's a]ssets," which were defined to include "the [City's] ownership rights to the water assets … currently held by the [Authority]." *See* Request for Qualifications at 1.[2] That is, the City launched a process to sell off the Authority before the Pennsylvania Supreme Court could issue a decision about whether any of this was lawful under Pennsylvania law.

---

[2] City of Chester, Delaware County, Pennsylvania, Request for Qualifications for Proposed Sale, Lease, or Other Monetization of Chester's Water Assets, Stormwater Assets, and Reversionary Interest in Certain Sewer Assets (Nov. 20, 2024), perma.cc/Y8CW-Z5GK.

The Request for Qualifications states that it is the first step in a two-stage procurement process. *Id.* The process contemplates that the City will determine which prospective buyers are deemed "qualified," which will then "have the opportunity to conduct due diligence on the [a]ssets." *Id.* Following this due diligence process, final and binding proposals will be submitted by those prospective purchasers. *Id.* at 1-2.

The Authority, to satisfy its obligations under state law to protect its ratepayers and honor its contractual bond covenants, issued a series of requests for information about the City's RFP process, pursuant to the Pennsylvania Right to Know Law ("RTKL"), 65 P.S. §§67.101-67.3104. These included the Governor's Office, the Office of General Counsel, the Department of Community and Economic Development (which employs and oversees the City's receiver), and several municipal authorities in Eastern Pennsylvania. *See, e.g.*, Appx313-18 (RTKL request made by the Authority regarding the City's RFP process). Since 2018, the RTKL has been an essential tool for the Authority to unearth information about the ways in which the City and various other interests have worked to seize the Authority's assets, one that has been vindicated by the Pennsylvania Supreme Court. *See Chester Water Auth. v. Pa. Dep't of Cmty. & Econ. Dev.*, 249 A.3d 1106, 1108 (Pa. 2021).

## IV. The Bankruptcy Court Enjoins the Authority from Issuing RTKL Requests

Unsurprisingly, the City does not want the Authority to know how it plans to seize and sell the Authority's assets. To that end, in response to the Authority's RTKL

requests, the City filed an emergency sanctions motion in Bankruptcy Court, asserting that language in the preamble to requests that the Authority had issued, and the requests themselves, violated the Bankruptcy Code's automatic stay.

The alleged basis for this violation was that "[t]he City's statutory right to dissolve the [Authority] and take possession of the [Authority's] assets is a property interest and it is property of the City." Appx301. The City stated that the Authority's RTKL requests were part of an "intimidation campaign" calculated to "destroy the value of the [City's] right under [state law] to dissolve the [Authority] and take possession of its assets by scaring off potential bidders who may be interested in those assets." *Id.* Simply put, the City argued (in quite circular fashion) that because it already had a right to control and dissolve the Authority, any effort by the Authority to investigate the City's actions would improperly harm the City's interests.

The City's motion sought an order, *inter alia*, compelling the Authority to withdraw the requests, prohibiting the Authority "from undertaking any further effort to threaten or intimidate potential participants in the RFP Process or to otherwise chill bidding or thwart the RFP Process," and imposing sanctions against the Authority, Appx299-300, as well as setting an emergency hearing, Appx311.

The Bankruptcy Court held an emergency hearing just two business days later, on February 12, 2025. The Authority filed a brief opposing the City's motion prior to the hearing. *See* Appx420-70. The Bankruptcy Court did not address the Authority's arguments at the hearing and instead concluded, without taking any evidence or

testimony, that: (a) the City holds a "contingent interest" in the Authority's assets under Pennsylvania state law that "is property of the estate … governed by [section] 541" of the Bankruptcy Code, Appx570; (b) "asking for information from potential bidders[] and … including this ridiculous language in [the offending cover letters is] … going to chill the bidding," Appx568; and (c) "these requests you've made serve to chill the bidding … [because] [y]ou're asking really for so much information," Appx578.

On February 13, 2025, the Bankruptcy Court entered its first order, requiring the Authority to withdraw any "RTKL requests referring to, relating to or in any way touching upon the … RFP Process" within 24 hours, and further enjoining the Authority "from issuing any RTKL request to any entity that in any way refers to, or relates to, or touches upon the RFP Process." Appx2.

On February 14, 2025, the Authority filed an emergency motion to clarify the scope of the injunction, so that it would not require the withdrawal of certain RTKL requests that the Authority was litigating before the Pennsylvania Office of Open Records. Appx550-58. The Bankruptcy Court held a hearing on February 20, 2025, to address that motion and schedule briefing on whether the preliminary injunction issued against the Authority should become a "permanent injunction." Appx620, 637, 650.

On February 21, 2025, the Bankruptcy Court entered an amended order, which slightly limits the scope of the preliminary injunction to require the immediate withdrawal of only three existing requests to municipal authorities within 24 hours. *See* Appx3-4. But the amended order, similar to the previous one, enjoins the Authority

"from issuing any RTKL request to any entity that in any way refers to or relates to the RFP Process." *Id.* That is, a federal court has flatly prohibited the Authority from taking steps allowed under state law to gather information about existential threats to the Authority's very existence.

## V.    The District Court Dismisses the Authority's Appeal of the Bankruptcy Court's Orders

The Authority appealed to the District Court, and asked that court to certify the Bankruptcy Court's Orders for interlocutory appeal to this Court. *See* Dist. Doc. 6.[3] The Authority also sought a stay of the Bankruptcy Court's Orders. *See* Dist. Doc. 23. The City moved to dismiss the appeal, *see* Dist. Doc. 7, and after the Authority filed its opening brief, *see* Dist. Doc. 13, to stay further briefing until a decision on its motion to dismiss, *see* Dist. Doc. 15.

The District Court dismissed the Authority's appeal and denied the Authority's motions to certify and to stay as moot. *See* Dist. Docs. 49-50. The District Court concluded that the Bankruptcy Court's Orders were "interlocutory, not final," because the Orders required "a scheduling order addressing briefing and discovery necessary to resolve 'all remaining issues related to the [Stay Violation] Motion.'" Appx8 (quoting Appx4) (alteration in original). The "Stay Violation Motion" is how the District Court referred to the City's motion alleging that the Authority had violated the automatic stay.

---

[3] References to the District Court's docket are denoted herein as "Dist. Doc."

Because the Bankruptcy Court's Orders contemplated some further action by the parties, the District Court deemed the Orders nonfinal. *Id.* The Court acknowledged that "finality is construed more flexibly in bankruptcy appeals than ordinary civil appeals" but stated that the "context" of the Orders "does not involve the kind of circumstances unique to bankruptcy proceedings that would make denial of appeal an inefficient use of judicial resources." *Id.*

The District Court also concluded that the Bankruptcy Court's Orders were not appealable as of right under 28 U.S.C. §1292(a)(1). The Court stated that "[w]hether §1292(a)(1) applies to appeals from injunctive orders of bankruptcy courts is an unsettled question within the Third Circuit that this Court declines to address today." Appx10. It acknowledged that language in this Court's opinions (which it dismissed as "*dicta*") state that injunctive orders of bankruptcy courts *are* appealable as of right. *See* Appx10-11 (citing *In re Pro. Ins. Mgmt.*, 285 F.3d 268, 282 n.16 (3d Cir. 2002) ("In addition, we agree that the District Court, sitting as an appellate court, was authorized to hear the appeal from the Bankruptcy Court as an appealable injunctive order under 28 U.S.C. §1292(a)...."); *In re World Imports Ltd.*, 820 F.3d 576, 582 n.5 (3d Cir. 2016) ("Pursuant to 28 U.S.C §§158(a) and 1292(a), the District Court had jurisdiction over the appeal from the Bankruptcy Court's order granting injunctive relief.")). And it noted that "[c]ourts within the Third Circuit have taken the same position." Appx11.

But the District Court nonetheless concluded that the Bankruptcy Court's Orders were not an injunction. *See* Appx10-11. Citing this Court's decision in *Saudi Basic*

*Industries Corp. v. Exxon Corp.*, 364 F.3d 106 (3d Cir. 2004), the District Court reasoned that the Bankruptcy Court's Orders were merely "temporary" because they were issued "until further order of the Bankruptcy Court." Appx10 (cleaned up). The Court emphasized that "the filing and scheduling for the hearing on the Stay Violation Motion is underway in the Bankruptcy Court."[4] *Id.* Because it deemed the Bankruptcy Court's Orders temporary, the District Court concluded that they "cannot be considered a preliminary injunction, even in the purely practical sense." *Id.*

The Authority appealed the District Court's dismissal order to this Court. *See* Appx12. The Court granted the Authority's motion to expedite and deferred to the merits panel the preliminary briefing regarding whether this Court has appellate jurisdiction over the case. *See* Doc. 26.

## SUMMARY OF THE ARGUMENT

The Court should reverse the District Court's ruling that the Bankruptcy Court's Orders were not appealable as of right. The Orders were final, resolving discrete constitutional and statutory issues regarding the Authority's legal right to issue RTKL requests to other state government entities. And they have the practical effect of a preliminary injunction even though the Orders (like all preliminary injunctions) are allegedly "temporary." The Authority has now been subject to the Orders for more than ten months, which underscores both the similarity of the Orders to an ordinary preliminary

---

[4] To date, nearly a year after the Court's original order, no such hearing has been scheduled. Appx112-45.

injunction and the urgent need for appellate review. Under this Court's precedents, the injunctive nature of the Bankruptcy Court's Orders makes them appealable as of right under 28 U.S.C. §1292(a)(1).

Because this Court has jurisdiction over the appeal, it can—and should—also reach the merits. On the merits, the Court should vacate the Bankruptcy Court's Orders, because they violate the Tenth Amendment, Bankruptcy Code, and First Amendment.

The Orders violate the core principles of dual sovereignty and federalism enshrined in the Tenth Amendment. They enjoin one political subdivision of Pennsylvania (the Authority) from exercising authority under state law to gather information about an RFP process being run for the benefit of a separate political subdivision of Pennsylvania (the City). This interference in the relationship between political subdivisions of Pennsylvania violates the state's sovereign right to structure itself and assign governmental powers as its sees fit. The Orders also violate the Bankruptcy Code, which codifies these same federalism principles in Chapter 9.

In addition, the Bankruptcy Court improperly applied Section 541 of the Bankruptcy Code, which does not apply under Chapter 9, to determine that the City has a "contingent right" to dissolve the Authority (an independent entity of the Commonwealth) and seize the Authority's assets. Whether the City has a "contingent right" to dissolve the Authority is determined by state law, under which the Authority solely owns and has title to its assets. And, at a minimum, the Bankruptcy Court should not

have issued these sweeping pronouncements about who controls the Authority as a matter of state law in the face of a pending appeal in the Pennsylvania Supreme Court addressing this very question.

Finally, the Bankruptcy Court's Orders are an unlawful prior restraint on the Authority's speech in violation of the First Amendment. The Orders are based on the Bankruptcy Court's disapproval of the content and tone of the Authority's speech in its cover letters to its RTKL requests. That prior restraint is subject to strict scrutiny, which it fails. After nearly a year, the muzzling of the Authority's speech should end.

If the Court concludes that it lacks ordinary appellate jurisdiction, it should exercise mandamus jurisdiction and vacate the Bankruptcy Court's Orders. The Orders rest on plain legal error, giving the Authority a clear and indisputable right to issuance of the writ. The Orders cause irreparable harm to the Authority by violating its constitutional rights and bedrock constitutional limits on federal court power over the organization of state government. If the Orders are not appealable as of right, then the Authority has no alternative means to timely vindicate its constitutional rights other than to obtain the writ. And it is well-established that issuance of the writ in the defense of constitutional rights is appropriate under these circumstances.

## STANDARD OF REVIEW

Where the District Court sits "as an appellate court to review the Bankruptcy Court's ruling, [this Court] review[s] the Bankruptcy Court's legal determinations de novo, its factual findings for clear error, and its exercises of discretion for abuse

thereof." *In re Phila. Newspapers, LLC*, 599 F.3d 298, 303 (3d Cir. 2010). Questions of law decided by a lower court in issuing a preliminary injunction are likewise reviewed de novo. *Del. Strong Fams. v. Att'y Gen. of the State of Del.*, 793 F.3d 304, 308 (3d Cir. 2015).

Where a lower court bases its decision on an error of law, this Court can vacate that decision and remand for any appropriate further proceedings. *See Soltane v. U.S. Dep't of Just.*, 381 F.3d 143, 145 (3d Cir. 2004) ("Because [the decision of an agency] was predicated on legal error … , we vacate the judgment of the District Court and remand this case for reconsideration by the agency."); *Sable v. Velez*, 388 F. App'x 235, 236 (3d Cir. 2010) ("Because we hold that the District Court's decision was based on legal error, we will vacate and remand.").

For mandamus to issue, (1) the petitioner must "have no other adequate means to attain the relief [it] desires"; (2) the petitioner must satisfy "the burden of showing that [its] right to issuance of the writ is clear and indisputable"; and (3) the issuing court "must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 380-81.

## ARGUMENT

### I.    The District Court had Jurisdiction Over the Authority's Appeal.

The District Court erred in holding that the Bankruptcy Court's Orders were nonfinal and thus not immediately appealable as of right. The Orders finally resolve a

discrete dispute about the Authority's legal right to issue RTKL requests. And in the alternative, the Orders are appealable because they constitute a preliminary injunction.

## A.    The Bankruptcy Court's Orders Were Final

An order is final if it "dispose[s] of a discrete dispute within the larger bankruptcy case." *Delaney*, 110 F.4th at 568. The Bankruptcy Court's Orders involve a discrete dispute over whether the Bankruptcy Court can prohibit the Authority from exercising its state-law right to issue RTKL requests.

The Bankruptcy Court's Orders also purported to enforce the automatic stay. Courts within this Circuit have repeatedly held that a Bankruptcy Court order enforcing the automatic stay is final and appealable under 28 U.S.C. §158(a)(1). *See, e.g.*, *In re Marvel Ent. Grp., Inc.*, 209 B.R. 832, 836 (Bankr. D. Del. 1997) (holding that an order enjoining bondholders from voting pledged shares to replace the debtor's board of directors under section 362(a)(3) of the Bankruptcy Code was final); *In re Bankr. Appeal of Allegheny Health, Educ. & Res. Found.*, 252 B.R. 332, 336-37 (Bankr. W.D. Pa. 1999) (holding that an order enjoining the Commonwealth from taking further actions in pending state court proceedings "indefinitely until further order of this Court" under section 362(a) was final); *In re Peer St., Inc.*, 2025 WL 894497, at *4 (D. Del. Mar. 24) (holding that an order deeming a lis pendens filing void ab initio under sections 362(a)(1) and (a)(3) was final); *In re Colon*, 941 F.2d 242, 245 (3d Cir. 1991) (holding that an order requiring a traffic court to return fines and pay lost wages under section 362(a) was final even though a determination of attorney's fees had been continued); *see also In re Lomas Fin.*

20

*Corp.*, 932 F.2d 147, 151 n.2 (2d Cir. 1991) (observing that an order determining that the automatic stay applies "is final as to that issue").

The trend of recent cases also supports appealability in disputes over the proper scope of an automatic stay. As the Supreme Court has explained, "the adjudication of a motion for relief from the automatic stay forms a discrete procedural unit within the embracive bankruptcy case" that "yields a final, appealable order when the bankruptcy court unreservedly grants or denies relief." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37-38 (2020); *see also In re Aikins*, 2025 WL 560625, at *1 & n.1 (3d Cir. Feb. 20) (holding that a grant of relief from the automatic stay was immediately appealable). Here, nothing suggests that "further developments might change" the Bankruptcy Court's "calculus." *Ritzen,* 589 U.S. at 47 n.4. Indeed, nothing *has* changed about the scope of the Orders in the more than ten months since they were issued. The Authority was—and remains—prohibited from issuing RTKL requests to investigate the City's efforts to seize and dissolve the Authority for the City's benefit.

The District Court relied heavily on the fact that the Bankruptcy Court's Orders would remain in effect only "until further Order of [the Bankruptcy] Court" and that the Orders require "a scheduling order addressing briefing and discovery necessary to resolve 'all remaining issues related to the [Stay Violation] Motion.'" Appx8 (quoting Appx4) (alteration in original). But no order scheduling a further hearing has been entered by the Bankruptcy Court.

In all events, as the Authority explained in its previous submission to this Court, the Bankruptcy Court restricted the subject of any scheduling order to "any further briefing and discovery necessary to resolve all remaining issues related to" the City's motion. Doc. 22 at 9 (quoting Appx4). The Bankruptcy Court offered no indication that the injunction *already imposed* was a "remaining issue." Because the Bankruptcy Court did not contemplate or require further proceedings in the Bankruptcy Court for the injunction to remain in effect (having already rejected the Authority's arguments as to why an injunction should not issue), the Orders that it issued are final in all relevant respects. *See id.* at 9-10.

The Bankruptcy Court's Orders are also appealable under the standards courts within this Circuit apply to determine finality. Factors relevant to the finality determination include "(1) whether the order leaves additional work to be done by the Bankruptcy Court; (2) whether the order implicates purely legal issues; (3) the impact of the Bankruptcy Court's order upon the assets of the debtor's estate; (4) the necessity for further fact-finding on remand to the Bankruptcy Court; (5) the preclusive effect of the District Court's decision on the merits of subsequent litigation; and (6) the furtherance of judicial economy." *In re Nw. Corp.*, 319 B.R. 68, 72 (Bankr. D. Del. 2005); *see also United States v. Nicolet, Inc.*, 857 F.2d 202, 206 (3d Cir. 1988) (identifying "the unique characteristics of the automatic stay" as an additional factor). "The 'most important' of these factors is the impact upon the assets of the bankrupt estate." *In re Mkt. Sq. Inn, Inc.*, 978 F.2d 116, 120 (3d Cir. 1992) (citation omitted).

These factors each counsel in favor of reviewability here. First, the Bankruptcy Court's Orders do not leave meaningful additional work for the Bankruptcy Court to do with respect to the injunction. The Bankruptcy Court did not grant the injunction on an interim basis or establish an end date for the injunction. The Orders did direct the parties to submit a scheduling order, but they restricted the subject of that order to "any further briefing and discovery necessary to resolve all remaining issues related to the [City's] [m]otion." Appx4. Importantly, the Orders "did not explicitly contemplate or require further proceedings in [the Bankruptcy] Court for the injunction … to remain in effect." *Allegheny Health*, 252 B.R. at 336-37.

The Bankruptcy Court entered a scheduling order almost six weeks after the Authority appealed to the District Court, setting an evidentiary hearing to consider whether the Authority *violated* the automatic stay and, if so, the appropriate scope of relief. *See* Appx740-42. But the Bankruptcy Court offered no indication that the injunction *already imposed* was a "remaining issue." The Bankruptcy Court previously advised the parties that the purpose of the February 12, 2025 hearing would be to address "whether the Authority's information requests related to the RFP [process] are a violation of the automatic stay and, if so, whether they should be enjoined," and that *"[a]ll other issues,* including the sanctions request, will be subject to further briefing and hearings." Appx729 (emphasis added). The Bankruptcy Court's Orders—like other preliminary injunctions—are thus final and ripe for immediate appellate review. That the Chapter 9

case below may continue while the Orders are on appeal does nothing to change the fact that the present appeal of the specific injunction at issue is proper.

Second, the issues the Authority raises in this appeal are primarily legal issues that require no additional fact-finding by the courts below. They arise from the Bankruptcy Court's legal determinations incorporated into the injunction and its rejection of the Authority's legal arguments. *See In re Nw. Corp.*, 319 B.R. at 73 (holding that an order denying stay relief "without prejudice" was final and appealable even though it provided an opportunity to renew the request later because the court "made a legal determination concerning the characterization of Appellant's claim as core" and "[i]n so doing, … rejected Appellant's legal position that the Bankruptcy Court was without discretion to enforce [an] arbitration agreement between the parties").

Specifically, as explained below, the issues the Authority raises include the Bankruptcy Court's misapplication of section 541 of the Bankruptcy Code and its rejection of the Authority's First and Tenth Amendment arguments. Those arguments are primarily legal in nature and are in no way contingent or dependent on any further proceedings or factfinding before the Bankruptcy Court.

Third, the issues raised on appeal significantly impact the claimed property of the City in the Chapter 9 case because the Authority challenges the Bankruptcy Court's determination that the City's alleged contingent right is property of the debtor. *See infra* Section II.B.

Fourth, appellate review of the issues could have substantial preclusive effect on the "remaining issues" under the City's motion because any determination that the injunction is unlawful or unconstitutional would eliminate the need to adjudicate questions regarding the Authority's alleged non-compliance with the Bankruptcy Court's Orders.

Finally, appellate review will promote judicial economy because the courts below will otherwise "be faced with the issue[s] raised by this appeal on final appeal" and can "save judicial time and resources by obviating the need for the bankruptcy court to conduct the hearing." *Marvel*, 209 B.R. at 836. Moreover, the issues identified in the scheduling order—entered nearly six weeks after the injunctive orders—were limited to whether the Authority violated the automatic stay and the scope of relief, which do not implicate the underlying issues the Authority is raising on appeal. The Bankruptcy Court has already rejected the Authority's positions on these issues in denying the Authority's motion to stay the Orders. *See* Appx739.

## B.    The Bankruptcy Court's Orders Were an Appealable Preliminary Injunction

Alternatively, the Bankruptcy Court's Orders are appealable on the independent basis that they operate as a preliminary injunction. *See World Imports Ltd.*, 820 F.3d at 582 n.5 ("Pursuant to 28 U.S.C. §§158(a) and 1292(a), the District Court had jurisdiction over the appeal from the Bankruptcy Court's order granting injunctive relief."); *Pro. Ins. Mgmt.*, 285 F.3d at 282 n.16 ("[W]e agree that the District Court, sitting as an appellate

25

court, was authorized to hear the appeal from the Bankruptcy Court as an appealable injunctive order under 28 U.S.C. §1292(a).").

This Court's conclusion that bankruptcy court injunctions are appealable makes sense from a plain reading of the applicable statutes. A district court has jurisdiction to hear an interlocutory appeal from a bankruptcy court order pursuant to 28 U.S.C. §158(a). An interlocutory appeal under 28 U.S.C. §158(a) "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." 28 U.S.C. §158(c)(2). Interlocutory appeals from the district courts to the courts of appeal are governed by 28 U.S.C. §1292(a). And under 28 U.S.C. §1292(a)(1), an interlocutory order "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions," is immediately appealable as of right. Accordingly, it follows naturally from the statutory text that a bankruptcy court order granting a preliminary injunction is immediately appealable as of right to the district court.

Indeed, many district courts in this Circuit have held that a bankruptcy court's injunction is appealable as of right, relying on *World Imports* and *Professional Insurance*. *See In re Byju's Alpha, Inc.*, 2024 WL 3487793, at *5 (D. Del. July 18) (collecting cases and recognizing that "[a]lthough courts are split on the issue, courts in the Third Circuit appear to agree that an order granting a preliminary injunction may be appealed as of right and reviewed by the district court, notwithstanding that the order is interlocutory, pursuant to 28 U.S.C. §§158(a), (c)(2), and 1292(a)(1)"); *see also Bartok v. DeAngelis*, 2012

WL 664928, at *1 (D.N.J. Feb. 29) ("This Court has jurisdiction over the appeal of an interlocutory order of the Bankruptcy Court pursuant to 28 U.S.C. §§158(a) and 1292(a)(1)."); *In re Midstate Mortg. Invs. Grp., LP*, 2006 WL 3308585, at *4 (D.N.J. Nov. 6) ("[W]here the orders entered in the bankruptcy court are in the form of injunctive relief, the district court … is authorized under §1292(a) to hear the appeal.").

An order "need not have the 'literal characterization' of an injunction for §1292(a)(1) to apply, as long as it has the same practical effect." *Saudi Basic Indus.*, 364 F.3d at 110; *see also Abbott v. Perez*, 585 U.S. 579, 595 (2018) (explaining the "valuable purpose" of the "'practical effect' rule"). To determine whether an order is injunctive, a court considers whether it is: "[1] directed to a party, [2] enforceable by contempt, and [3] designed to accord or protect some or all of the substantive relief sought by a complaint in more than a temporary fashion." *Saudi Basic Indus.*, 364 F.3d at 110 (cleaned up). Importantly, the relief granted by a lower court—not the relief sought by a party— "determines whether an order is injunctive." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 670 (3d Cir. 2016).

Here, the Bankruptcy Court's Orders constitute injunctive relief because they expressly, by their terms, prohibit the Authority from issuing RTKL requests concerning the RFPs that the City seeks to conduct for the sale of the Authority's water system. This injunction, imposed without an end date, prohibits the Authority from making requests for information pursuant to Pennsylvania state law concerning the City's efforts to seize and sell assets that the Authority owns and has statutory and contractual

obligations to protect. *See Wright v. Elton Corp.*, 2021 WL 5822306, at *1 (3d Cir. Dec. 7) (explaining that an injunctive order "must direct a party to engage or not engage in specific conduct"). The Orders thus meet all the criteria for determining that an order has the practical effect of an injunction. *See In re AGR Premier Consulting, Inc.*, 550 F. App'x 115, 120 n.6 (3d Cir. 2014) (holding that a bankruptcy court's order finding entity in contempt for violating automatic stay had "the practical effect of an injunction").

*AGR Premier* is particularly instructive. There, the bankruptcy court adjudicated a "Motion for Contempt" that was premised, in part, on an alleged violation of the automatic stay. 550 F. App'x at 119. In deciding the appeal, this Court recognized that it had "an obligation to independently consider [its] jurisdiction." *Id.* at 120 n.6. In doing so, it concluded that it had jurisdiction under both section 1291 (as a final order) and section 1292 because the bankruptcy court's order was "effectively an injunction." *Id.* As the Court explained:

> With respect to the contempt finding constituting an injunction, it was (1) directed to 21st Capital, (2) was enforced by contempt, and (3) was designed to give substantive relief to Bayer. It thus meets all of the criteria we have set forth for determining that an order has the practical effect of an injunction. Accordingly, it is appealable under §1292.

*Id.* (citations omitted).

The same is true here. The Bankruptcy Court's Orders at issue are: (1) directed at the Authority and enjoin it from specific conduct; (2) enforceable by contempt; and (3) designed to give substantive relief to the City on issues that are central to the City's bankruptcy. Accordingly, they have the practical effect of an injunction and are

appealable as of right under §1292. *Id.*; *see also Midstate Mortg.*, 2006 WL 3308585, at *4-*5 (holding that the "Bankruptcy Court's order restraining Appellants from prosecuting the third party complaint against Broege unquestionably qualifies as injunctive relief subject to an appeal as of right").

The District Court cited *In re THG Holdings LLC*, 2020 WL 1493622 (D. Del. Mar. 27), for the proposition that an order purporting to enforce an automatic stay is not an appealable preliminary injunction. *See* Appx9. But that case held that an injunctive order issued in an adversary proceeding cannot be final unless it ends the litigation; this exception to this Court's pragmatic finality approach does not apply in contested matters. *THG*, 2020 WL 1493622, at *5.

The District Court also emphasized the supposedly temporary nature of the Bankruptcy Court's Orders. *See* Appx10. But that misconstrues the relevant precedent. The types of "temporary" orders that are not appealable under *Saudi Basic Industries* are those "that in no way touch on the merits of the claim but only relate to pretrial procedures." 364 F.3d at 110 (quotation marks omitted). The Bankruptcy Court's Orders here very much went to the merits of this dispute: whether a Bankruptcy Court may reorganize Pennsylvania's political subdivisions, prevent the Authority from exercising its right to issue RTKL requests to investigate the City's efforts to dissolve the Authority, and impose an unlawful prior restraint.

Although the Bankruptcy Court could theoretically reconsider its decision, that is true in every case where a district court issues a preliminary injunction. District courts

always have the power to modify their preliminary injunction orders, but they are still immediately appealable as of right under 28 U.S.C. §1292(a). *See Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 241 (3d Cir. 2003) ("The law has entrusted the power to dissolve a preliminary injunction to the discretion of the trial court.…") (cleaned up).

Even *temporary restraining orders* are sometimes appealable under 28 U.S.C. §1292(a). *See Miller v. Mitchell*, 598 F.3d 139, 145 (3d Cir. 2010) (this Court had jurisdiction over appeal of a temporary restraining order because "it was entered for an indeterminate period of time after notice to the defendant and an adversary hearing"); *see also In re Arthur Treacher's Franchise Litig.*, 689 F.2d 1150, 1155 n.7 (3d Cir. 1982) ("In deciding the jurisdictional question, this Court will look beyond terminology to the actual content, purport, and effect of that which may otherwise be described as a temporary restraining order or as a preliminary injunction.").

The Authority's position is bolstered by recent Supreme Court authority. In *Department of Education v. California*, the Court considered whether to stay a district court's order enjoining the termination of certain education-related grants. 604 U.S. 650, 650-52 (2025). The Court determined that the Court of Appeals had jurisdiction over the government's appeal and had erred in concluding otherwise. *Id.* at 651. While "the Courts of Appeals generally lack appellate jurisdiction over appeals from TROs, several factors counsel[ed] in favor of construing the [d]istrict [c]ourt's order as an appealable preliminary injunction." *Id.* The Court explained that the district court's order "carrie[d]

many of the hallmarks of a preliminary injunction," and the "basis for issuing the orders [was] strongly challenged" by the party subject to it. *Id.* (cleaned up). The Bankruptcy Court's Orders here were also issued after a hearing and were predicated on its rejection of the Authority's constitutional arguments.

Because the District Court's belief that the Bankruptcy Court's Orders were too temporary to be immediately appealable was mistaken, the District Court should have exercised jurisdiction under 28 U.S.C. §§158(a) and 1292(a). This Court should therefore vacate the District Court's dismissal of the Authority's appeal and, if it believes it cannot reach the merits until the District Court has done so, instruct the District Court to expeditiously resolve the Authority's appeal.

## II. The Court Should Vacate the Bankruptcy Court's Orders

This Court also has jurisdiction to address the merits because the District Court's order dismissing the Authority's appeal is a final decision, which leaves in place final orders of the Bankruptcy Court. *See* 28 U.S.C. §158(d)(1). A court of appeals has discretion to consider and decide issues not decided by the district court. *See Aljabri v. bin Salman*, 106 F.4th 1157, 1163 n.5 (D.C. Cir. 2024) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."). As this Court has recognized, it is "generally appropriate for an appellate court to reach the merits of an issue not decided by the district court if the factual record is developed and the issues provide purely legal questions, upon which an appellate court exercises

plenary review." *Mirza v. Ins. Adm'r of Am., Inc.*, 800 F.3d 129, 133 n.4 (3d Cir. 2015) (quotation marks omitted); *see also Kannikal v. Att'y Gen.*, 776 F.3d 146, 148-49 (3d Cir. 2015).

Here, the Authority's opening brief in the District Court detailed extensively the legal errors in the Bankruptcy Court's Orders. *See* Dist. Doc. 13 at 23-51. But the District Court's briefing stay, followed by its erroneous determination that it lacked jurisdiction, resulted in the District Court not reaching the merits. The issues raised here are purely legal and do not "depend on the factual record below." *Wayne Cnty. Neighborhood Legal Servs. v. Nat'l Union Fire Ins. Co.*, 971 F.2d 1, 3 n.2 (6th Cir. 1992). The general practice of not considering issues that were not raised below exists so that "parties may have the opportunity to offer all the evidence they believe relevant and so that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." *Kannikal*, 776 F.3d at 149 (quotation marks omitted).

Here, the Authority *did* raise the issues below, and the City cannot claim surprise that these same issues are being raised in this Court. *Id.* Indeed, this whole dispute was initiated in the first instance when *the City* ran to the Bankruptcy Court to prohibit the Authority from continuing to issue RTKL requests. *See supra* at p.11.

This Court should thus exercise its discretion to reach the merits because the record is fully developed and the Bankruptcy Court's Orders (which have already been in place for 10 months) are causing ongoing prejudice to the Authority's ability to

protect itself, an entity of Pennsylvania, from dissolution. And on the merits, the Bankruptcy Court's Orders are contrary to law and should be vacated.

### A. The Bankruptcy Court's Orders Violate the Tenth Amendment and Chapter 9 of the Bankruptcy Code

**1.** The Tenth Amendment provides, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The Bankruptcy Court's Orders prohibit the Authority (which is a state entity) from learning about the efforts by the City (which is also a state entity) to dissolve it and seize its assets. The mechanism the Authority has used—Pennsylvania's Right to Know Law—is one expressly authorized by state law. For a federal court to interfere in a state entity's authority to garner information about another state entity's attempt to dissolve it is an extraordinary intrusion into the internal structure of Pennsylvania's government.

That intrusion is precisely at the heart of what the Tenth Amendment seeks to prevent. *See Bacon v. City of Richmond, Va.*, 475 F.3d 633, 641 (4th Cir. 2007) ("A State has near plenary authority to allocate governmental responsibilities among its political subdivisions. This power to structure its internal government is among those reserved to the [States] by the Tenth Amendment."). As the Supreme Court has recognized, "it is characteristic of our federal system that States retain autonomy to establish their own governmental processes.*" Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 816 (2015). And it is "[t]hrough the structure of its government" that "a

State defines itself as a sovereign." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). The sovereignty of Pennsylvania is violated where, as here, a bankruptcy court prevents a state entity from defending itself, in a manner permitted by state law, from an attack by another entity created by the same state.

2.     By enjoining the Authority from issuing RTKL requests to other government agencies concerning the City's RFP that seeks to seize the Authority's water system, the Bankruptcy Court materially interfered with the Authority's ability to comply with multiple related obligations it has under state law. Indeed, the whole purpose of the Bankruptcy Court's Orders is to facilitate the City's proposed seizure and dissolution of the Authority. The Bankruptcy Court's injunction impermissibly interferes with state law powers and procedures, in several respects.

*First*, the injunction prevents the Authority from complying with obligations under its bond indenture, including its covenant to "at all times … (c) *maintain* its existence and franchises and *defend* its right to own and operate the Water System for the benefit of the bondholders and the users of the Water System." Appx276 (emphasis added). The Authority does not have discretion under Pennsylvania law to refuse to comply with this covenant; rather, Pennsylvania law requires the Authority to honor it: the Authority is "not … authorized to do anything which will impair the security of the holders of the obligations of the authority *or violate any agreements with them* or for their benefit." 53 Pa.C.S. §5617 (emphasis added).

*Second*, the RTKL concerns records requests of "agencies," which are defined as "[a] Commonwealth agency, a local agency, a judicial agency or a legislative agency." 65 P.S. §§67.102, 67.501. This means that when the Authority makes a RTKL request, it is doing so of another government entity. Thus, by enjoining the Authority from issuing RTKL requests, the Bankruptcy Court quite literally put its gavel in the gears of the operation of Pennsylvania's government as expressly designed by the General Assembly.

*Third*, apart from its contractual obligations, the Authority also has fiduciary obligations to members of the public who rely on the public drinking water that it supplies. For instance, the Environmental Rights Amendment to the Pennsylvania Constitution states that the people have a right to "pure water" and that "the Commonwealth" is "trustee" of "Pennsylvania's public natural resources." Pa. Const. art. I, §27. The Pennsylvania Supreme Court has explained that the "[t]rustee obligations" provided in section 27 "are not vested exclusively in any single branch of Pennsylvania's government." *Pa. Envt'l. Def. Found. v. Commonwealth*, 161 A.3d 911, 932 n.23 (Pa. 2017). "[I]nstead, all agencies and entities of the Commonwealth government, both statewide and local, have a fiduciary duty to act toward the corpus with prudence, loyalty, and impartiality." *Id.* Accordingly, the Authority has a fiduciary obligation to the citizens for the public natural resources that form the corpus of the environmental trust.

**3.**    By enjoining the Authority's ability to protect these interests using a procedure explicitly authorized by Pennsylvania law, the Bankruptcy Court interfered with

the Authority's governmental operations, which is something it could not have done to the City itself. That is because Chapter 9 of the Bankruptcy Code carefully circumscribes the ability of a bankruptcy court to interfere with the governmental operations of a municipality. Under 11 U.S.C. §903, Chapter 9 "does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality." And 11 U.S.C. §904 limits the power of a bankruptcy court to interfere with "any of the political or governmental powers of the debtor."

Sections 903 and 904, along with much of the rest of Chapter 9, implement the constitutional limitations found in the Tenth Amendment and our system of dual sovereignty. In *United States v. Bekins*, the Supreme Court upheld an amended municipal bankruptcy statute because, unlike the previous statute that the Court found unconstitutional on federalism grounds, "[n]o interference with the fiscal or governmental affairs of a political subdivision is permitted" and "no control or jurisdiction over that property and those revenues of the petitioning agency necessary for essential governmental purposes is conferred by the [law]." 304 U.S. 27, 51 (1938). Thus, federalism principles are incorporated into Chapter 9 itself. *See In re City of Harrisburg, Pa.*, 465 B.R. 744, 753 (Bankr. M.D. Pa. 2011) ("Although Congress has the sole power to establish 'uniform Laws on the subject of Bankruptcies throughout the United States' (U.S. Const. art. I, §8), where federal bankruptcy law intersects with the rights of states to regulate the activities of political subdivisions created by the state, principles of dual sovereignty as

defined by the Tenth Amendment must be considered."); *cf. In re Ozark Mountain Solid Waste Dist.*, 2014 WL 7494926, at *2 (Bankr. W.D. Ark. Aug. 5) ("When a debtor's eligibility for chapter 9 relief is questioned, bankruptcy courts must exercise jurisdiction cautiously.").

In *Bekins*, the Supreme Court permitted municipal bankruptcy law to exist only because it protected state sovereignty. Core concepts of federalism and our system of dual sovereignty required these protections of state authority because "[t]hrough the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign." *Gregory*, 501 U.S. at 460; *see also* Federal Judicial Center, *Navigating Chapter 9 of the Bankruptcy Code* 6 (2017) (In *Bekins*, "[t]he Court focused on … the *consensual* nature of the 1937 legislation.") (emphasis added).

To be sure, section 904 refers only to interference with the powers of the "debtor." But the Authority is aware of no controlling authority that addresses the novel legal question of whether a non-debtor state entity may be subjected by a bankruptcy court to interference with its governmental powers—indeed, state legal obligations—particularly where a debtor would receive protection under the same circumstances.

The Bankruptcy Court's negative inference—that there was no such protection—is erroneous. While a bankruptcy court exercises significant power, it must act within constitutional limits, which include respecting the power of a state itself to determine how its political subdivisions are organized and how they may interact with one another. *See Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 71 (1978) ("The number,

nature and duration of the powers conferred upon municipal corporations and the ter-

ritory over which they shall be exercised rests in the absolute discretion of the state.")

(cleaned up); *Schuette v. BAMN*, 572 U.S. 291, 327 (2014) (Scalia, J., concurring) (The

Supreme Court has "emphasized the near-limitless sovereignty of each State to design

its governing structure as it sees fit."). Here, the Bankruptcy Court has become the

City's vehicle for the restructuring of state government, far exceeding its constitutional

bounds.

## B.    The Bankruptcy Court's Orders Violate Section 541 of the Bankruptcy Code

The Bankruptcy Code's automatic stay allows a bankruptcy court to enjoin "any

act to obtain possession of property of the estate or of property from the estate or to

exercise control over property of the estate." 11 U.S.C. §362(a)(3). It follows that if the

property "is not property of the estate, the stay has not been violated" by an act that

seeks to take possession of or exercise control over that property. *In re Datesman*, 1999

WL 608856, at *2 (Bankr. E.D. Pa. Aug. 9).

Here, the Bankruptcy Court applied section 541(a)(1) of the Bankruptcy Code,

which provides that the filing of a bankruptcy petition "creates an estate … comprised

of all the following property, wherever located and by whomever held: … all legal or

equitable interests of the debtor in property as of the commencement of the case." 11

U.S.C. §541(a). The Bankruptcy Court's belief that the Authority's RTKL requests vio-

lated the automatic stay was grounded in its conclusion that the City had an "interest"

38

in the Authority's property within the meaning of that section, such that the Authority's RTKL requests violated the automatic stay. As the Bankruptcy Court recognized at the hearing, if there was no "property of the debtor" for purposes of section 541, then the Court would lack a basis to find a violation of the automatic stay. *See* Appx566 (Bankruptcy Court emphasizing that "[Section] 541 is so incredibly broad").

But the Authority's assets are not the property of the City, and thus the Authority's RTKL requests could not have violated the automatic stay. The Bankruptcy Court's citation of section 541 to find otherwise was erroneous because that section is not among the provisions of the Bankruptcy Code applied in Chapter 9 cases. *See* 11 U.S.C. §901(a). Instead, under 11 U.S.C. §902(1), the term "property of the estate" is to be replaced with "property of the debtor" when a provision containing that term is applied in Chapter 9.

By default, property interests are determined by applicable state law. In *Butner v. United States*, the Supreme Court explained that "[u]nless some federal interest [such as an act of Congress] requires a different result … [p]roperty interests are created and defined by state law." 440 U.S. 48, 55 (1979). As such, "there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* (quotation marks omitted); *see In re Jefferson Cnty., Ala.*, 474 B.R. 228, 249 (Bankr. N.D. Ala. 2012) (because "Congress did not utilize its power to establish uniform laws on bankruptcy to define property interests of a debtor or the bankruptcy estate, one is to resort to state law to determine property interests"). *Butner*

was "decided under the bankruptcy statute that immediately preceded the current one," but its "analysis … remains applicable to cases brought under the current law." *Jefferson Cnty.*, 474 B.R. at 249.

Although Congress amended the Bankruptcy Code to define "property of the estate" in section 541(a), *see id.* at 247 n.7, it provided no definition for "property of the debtor." Accordingly, "property interests" are "defined by state law[]." *Id.* at 249; *see also id.* at 248 ("Determination of the scope of the 28 U.S.C. §1334(e)(1) grant of exclusive jurisdiction over a debtor's property [in a Chapter 9 case] is done by reference to [state] law defining the [debtor's] property interests.").

The Bankruptcy Court determined that the City holds a "contingent interest" in the Authority's assets, such that the Authority's property was property of City's estate under the Bankruptcy Code. Appx569-70. The Court concluded that because "[p]roperty of the estate, under [section] 541" of the Bankruptcy Code "is super-duper broad," it includes the City's contingent interest, Appx569, and that this interest "is property of the estate … governed by [section] 541," Appx570.

But the Bankruptcy Court failed to look to Pennsylvania law to determine which interests are property of the City. *See In re Jefferson Cnty.*, 474 B.R. at 241; *Butner*, 440 U.S. at 55. The Court provided no analysis establishing that Pennsylvania courts would recognize the City's ability to conduct the RFP process as a property interest, or recognize that the City holds a property interest in the Authority's assets themselves.

In all events, even if some *potential* right did exist, there is no reason to believe that it is "property" under the Bankruptcy Code. The Authority solely owns its assets, holds title to the assets in the Authority's name, and can sell the assets in the Authority's discretion. *See Cnty. of Allegheny v. Moon Twp. Mun. Auth.*, 671 A.2d 662, 666 (Pa. 1996) ("'[T]he plain and ordinary language of' the Municipal Authorities Act "specifically authorizes a municipal authority to convey any and all property without limitation."). The Authority's ability to operate and especially to borrow is premised on that title. Even under section 541(a)(1), "whether debtor could have availed itself of something or whether it had value to debtor is not dispositive when determining whether that something is property of debtor's bankruptcy estate." *In re Forman Enters., Inc.*, 273 B.R. 408, 415 (Bankr. W.D. Pa. 2002).

Remarkably, the Bankruptcy Court appears to have grounded its holding on the stayed, interlocutory lower court decision *currently on appeal* to the Pennsylvania Supreme Court. *In Re Chester Water Auth. Tr.*, 263 A.3d 689 (Pa. Commw. Ct. 2021), *appeal granted*, 276 A.3d 203 (Pa. 2022). Although it did not reference the Commonwealth Court decision (or any other decision) by name, the Bankruptcy Court stated:

> [A]s it stands now, it looks like it's on appeal, but right now it does appear that the City of Chester does have this *contingent ability to take this action that they want to be taking*, which I know that the [Authority] vehemently objects to. So if you guys win [i]n the Supreme Court, then they may not have a *contingent right*, and that may not be property of the estate. But as it stands now, prior to resolution by the Pennsylvania Supreme Court, it seems pretty clear to me that this is an asset of the bankruptcy estate, right?

Appx564 (emphasis added).

The Bankruptcy Court's language "as it stands now" strongly suggests that it is continuing to apply the lower court decision in favor of the City that is *stayed and being appealed*. But even if that (stayed) lower court decision should be deemed binding on a federal court, the state court itself limited its holding by clarifying that "the litigation in this case is far from over, and, until all the pertinent legal issues surrounding the City's authority under [the Municipal Authorities Act]—and possibly other statutes—are resolved, the City's plans and future expectations with respect to *the Authority's assets* are nothing more than a *surmised contingency*." *In re Chester Water*, 263 A.3d at 706 (emphasis added). Nowhere did that court hold that the City has an actual property interest under Pennsylvania law. Because the City has no interest in the Authority's property under state law, the Authority's RTKL requests could not have violated the automatic stay by allegedly impairing the value of such interests.

## C.    The Bankruptcy Court's Orders Violate the First Amendment

As is clear from the text of the cover letters to the Authority's RTKL requests, the requests both seek information about and communicate a message on an important issue of public policy: which entity should decide what happens to the Authority's

public water system.[5] The Bankruptcy Court's Orders enjoining the Authority from issuing any further such requests amount to an improper prior restraint on speech, namely, the Authority's ability to communicate that message.

But "prior restraints on speech are the most serious and the least tolerable infringement on First Amendment rights. While prior restraints are not unconstitutional per se, they are *presumptively unconstitutional* and subject to strict scrutiny." *Matter of Subpoena 2018R00776*, 947 F.3d 148, 155 (3d Cir. 2020) (emphasis added) (cleaned up); *see also Alexander v. United States*, 509 U.S. 544, 550 (1993) ("'[P]rior restraint … describe[s] administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur. Temporary restraining orders and permanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints.") (emphasis omitted).

---

[5] The Bankruptcy Court ordered that the text of the letters be read into the record *See* Appx567 ("The purpose of this right-to-know law request is to determine whether your agency is participating in efforts to dissolve the [Authority's] board of directors, terminate the [Authority's] legal existence, and monetize/privatize the [Authority]. We understand that you may have been solicited to participate in this conspiracy with the receiver to effectuate the hostile takeover of the [Authority] by engaging in this sham RFP process. If true, why would you be involved in such an effort to depose the board, seize the assets, and terminate the governance of a well-run, award-winning municipal authority? In addition to its other legal duties to its ratepayers, the [Authority's] bond indenture provides that the [Authority's] covenants will at all times maintain its existence and franchises and defend its right to own and operate the water system for the benefit of the bondholders and the users of the water system. The [Authority] takes this commitment seriously.")

The Bankruptcy Court singled out and prohibited the Authority's RTKL requests both because it did not like the tone the Authority used in its cover letters and because it did not like the content of the requests, all of which is anathema to the First Amendment. The Bankruptcy Court's objection to the tone of the cover letters is apparent from the transcript of the emergency hearing. *See, e.g.*, Appx568 ("So folks, this language is very provocative. Would we not agree that it's very provocative and could definitely have the effect of chilling any kind of bidding?").

The Bankruptcy Court's objection to the content of the Authority's requests is equally clear from the terms of the injunction orders themselves. The Court did not limit its injunction to "provocative" language. Instead, it "enjoin[ed] the issuance of additional [RTKL] Requests which *relate to or reference* the City of Chester's 'RFP Process' as defined in the Plan of Adjustment." Appx3 n.1 (emphasis added). Thus, the Bankruptcy Court actually imposed a content- and subject-matter-based prior restraint on the Authority's speech. "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Such restrictions "are presumptively unconstitutional." *Id.*

Furthermore, contrary to the City's suggestions in other filings, the First Amendment protection of freedom of speech is not limited to private individuals. "A municipal corporation, like any corporation, is protected under the First Amendment in the same manner as an individual." *Cnty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1387,

1390 (E.D.N.Y. 1989), *aff'd*, 907 F.2d 1295 (2d Cir. 1990); *see Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 342 (2010) ("[P]olitical speech does not lose First Amendment protection 'simply because its source is a corporation.'"); *id.* at 342-43 ("'The identity of the speaker is not decisive in determining whether speech is protected. Corporations and other associations, like individuals, contribute to the 'discussion, debate, and the dissemination of information and ideas' that the First Amendment seeks to foster.'").

Indeed, "[g]overnmental petitioning is as crucial to the modern democracy as is that of private parties." *Mariana v. Fisher*, 338 F.3d 189, 200 (3d Cir. 2003); *see Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 599 (S.D.N.Y. 2010) (citing *Mariana* for proposition that "the Third, Seventh, and Ninth Circuits have explicitly held that the First Amendment right to petition and/or the correlative *Noerr-Pennington* doctrine protect government actors from liability for petitioning activity").

To similar effect, the Supreme Court has held that under the government speech doctrine, "[a] government entity has the right to speak for itself. [I]t is entitled to say what it wishes, and to select the views that it wants to express." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467-68 (2009) (cleaned up). "Indeed, it is not easy to imagine how government could function if it lacked this freedom." *Id.* at 468.

The Bankruptcy Court's speculation that a bidder might be dissuaded from participating in the City's RFP process by the Authority's RTKL requests falls far below the burden of overcoming the presumptive unconstitutionality of a prior restraint. The

45

Bankruptcy Court never even conducted an evidentiary hearing on whether the Authority's RTKL requests would chill participation in the RFP process. Because the Bankruptcy Court's prior restraint on the Authority's speech cannot satisfy strict scrutiny, this Court should overturn its Orders.

## III.    If this Court Determines that it Lacks Appellate Jurisdiction, it Should Exercise its Mandamus Jurisdiction and Vacate the Orders Below

This Court may treat this appeal as a petition for a writ of mandamus and vacate the Bankruptcy Court's Orders. *See Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987) (a court "may in appropriate circumstances treat an attempted appeal as a request for leave to file a petition for a writ of mandamus"); *In re F.C.C.*, 217 F.3d 125, 133-34, 141 (2d Cir. 2000) (granting mandamus and directing the bankruptcy court to vacate an order it lacked the authority to issue). Three conditions must be met for the writ to issue: (1) the petitioner must "have no other adequate means to attain the relief [it] desires"; (2) the petitioner must satisfy "the burden of showing that [its] right to issuance of the writ is clear and indisputable"; and (3) the issuing court "must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 380-81 (cleaned up).

If this Court agrees with the City that the District Court lacked jurisdiction over this appeal, then mandamus is warranted to correct the Bankruptcy Court's fundamental errors. The Authority has no means of obtaining relief from the Bankruptcy Court's Orders if they are not appealable as of right. The Authority's request for a stay from

the Bankruptcy Court was denied, *see* Appx739, and the District Court dismissed the Authority's appeal, denying as moot the Authority's stay motion, *see* Appx16. The lower courts have thus "foreclosed the relief" the Authority requests, and the Authority "cannot adequately obtain the relief [it] seek[s] through the regular appeals process." *In re A.H.*, 999 F.3d 98, 105-06 (2d Cir. 2021) (quotation marks omitted). "Failure to issue a writ in this case would subject [the Authority] to a continuing impairment of its First Amendment freedoms" as well as its Tenth Amendment rights. *In re Asbestos Sch. Litig.*, 46 F.3d 1284, 1295 (3d Cir. 1994); *see A.H.*, 999 F.3d at 106 (a party's loss of "precious constitutional rights" can justify mandamus).

The Bankruptcy Court's Orders are "squarely inconsistent" with Supreme Court precedent. *Asbestos Sch. Litig.*, 46 F.3d at 1289. The Tenth Amendment reserves to *the states* the power to allocate power between their political subdivisions. *See Holt Civic Club*, 439 U.S. at 71; *Schuette*, 572 U.S. at 327 (Scalia, J., concurring).

Nor is it consistent with our federal system to prevent the Authority—a state entity—from exercising a right that is explicitly afforded to it under state law: to issue requests under the Pennsylvania RTKL to gain more information about the City's efforts to dissolve the Authority and seize its assets. As a state-sanctioned process governed by a state statute, any challenge to its exercise should have been brought and litigated in state court.

The Bankruptcy Court also violated the Authority's rights under the First Amendment by ordering a prior restraint on political speech and depriving the

Authority of its right to access government records under the RTKL. The Authority's RTKL requests both request information about and communicate a message on an important issue of public policy: which entity should decide what happens to the Authority's public water system. The Bankruptcy Court's Orders enjoining the Authority from issuing any further such requests amounts to an improper prior restraint on the Authority's ability to communicate its message. *See Alexander*, 509 U.S. at 550; *Subpoena 2018R00776*, 947 F.3d at 155.

Second, and for similar reasons, the Authority's right to the writ is clear and indisputable. The Bankruptcy Court's decision "lies far outside the bounds of established … law." *Asbestos Sch. Litig.*, 46 F.3d at 1289. In determining whether the lower court "has clearly and indisputably based its ruling on a legal error, [the Court] do[es] not confine [its] review to the narrow (and often empty) universe of binding cases directly on point." *In re United States*, 945 F.3d 616, 625 (2d Cir. 2019). Instead, the Court "consider[s] all relevant legal authorities." *Id.* "The ultimate question is simply whether, bearing in mind the exceptional nature of mandamus," the Court is "left with the 'firm conviction' that the district court's view of the law was incorrect." *Id.*

Here, the relevant authorities establish that the Bankruptcy Court's Orders violate both free speech and state sovereignty, which weigh heavily against the relief the Bankruptcy Court granted. *See Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 239 F.3d 172, 176 (2d Cir. 2001) ("When a prior restraint takes the form of a court-issued injunction, the risk of infringing on speech protected under the

First Amendment increases."); *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205-06 (3d Cir. 2024) (In assessing irreparable harm, "[c]ourts rightly hesitate to interfere with exercises of executive or legislative authority. … Without the clarity of a full trial on the merits … we must err on the side of respecting state sovereignty."). The Authority should not have to "risk[] contempt sanctions for speech that may ultimately, after full appellate review, be found constitutionally protected." *Metro. Opera,* 239 F.3d at 176.

Finally, issuance of the writ is appropriate under the circumstances. "[M]andamus has been recognized as a proper remedy in cases involving prior restraints." *Asbestos Sch. Litig.*, 46 F.3d at 1294. The more than ten months during which the Authority has been restrained by these Orders is an "intolerably long period during which to permit the continuing impairment of First Amendment rights." *Id.* (quotation marks omitted); *see Del. State Sportsmen's Ass'n*, 108 F.4th at 204 ("First Amendment activity, like … political speech, can be especially time-sensitive.").

So too regarding the ongoing violation of the Tenth Amendment. The Bankruptcy Court's Orders interfere with the Authority's political and governmental affairs in violation of the core principles of dual sovereignty and federalism enshrined in the Tenth Amendment and further codified in Chapter 9 of the Bankruptcy Code. The Court's resolution of these issues would "aid in the administration of justice" by offering guidance to bankruptcy courts on how to handle future disputes between a

municipal corporation and a municipality that may arise in the future. *United States*, 945 F.3d at 628.

## CONCLUSION

The District Court had jurisdiction over the Authority's appeal because the Bankruptcy Court's Orders are both final and an appealable preliminary injunction. This Court should therefore, *at a minimum*, reverse the District Court's contrary determination and remand to the District Court to consider the Authority's appeal. That said, the better course is for the Court to reach the merits and, upon doing so, the Court should vacate the Bankruptcy Court's Orders because they violate the Tenth Amendment, the Bankruptcy Code, and the First Amendment. Should the Court decide that it lacks jurisdiction over the appeal, it should exercise its mandamus jurisdiction and vacate the Bankruptcy Court's clearly erroneous Orders, given the irreparable harm they are causing the Authority and the lack of an alternative means for the Authority to obtain relief.

Respectfully submitted,

| | |
|---|---|
| Kevin Dooley Kent | */s/ Jeffrey M. Harris* |
| Cynthia M. Filipovich | Jeffrey M. Harris |
| Andrew K. Garden | Rachael C.T. Wyrick |
| CLARK HILL PLC | Julius Kairey |
| 2001 Market Street, Suite 2620 | CONSOVOY MCCARTHY PLLC |
| Philadelphia, PA 19103 | 1600 Wilson Blvd., Suite 700 |
| Telephone: (215) 640-8531 | Arlington, VA 22209 |
| kkent@clarkhill.com | Telephone: (703) 243-9423 |
| cfilipovich@clarkhill.com | jeff@consovoymccarthy.com |
| agarden@clarkhill.com | rachael@consovoymccarthy.com |
| | julius@consovoymccarthy.com |

January 7, 2026                              *Counsel for Appellant Chester Water Authority*

## COMBINED CERTIFICATIONS

1. Pursuant to Third Circuit L.A.R. 28.3(d), at least one of the attorneys whose names appear on this motion, including the undersigned, is a member in good standing of the bar of this Court.

2. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,996 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

3. This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a 14-point proportionally spaced typeface (Garamond) using Microsoft Word.

4. The text of the electronic version of this document is identical to the text of the hard copies that will be provided.

5. The electronic file containing the brief was scanned for viruses using the most recent version of Microsoft Defender Antivirus, and no virus was detected.

6. On January 7, 2026, I caused the foregoing to be filed with the Clerk of Court using the CM/ECF System, and all counsel of record in this case is a Filing User who will receive notice of such filing.

Dated: January 7, 2026

*/s/ Jeffrey M. Harris*
Jeffrey M. Harris

No. 25-2783

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

IN RE: CITY OF CHESTER, PENNSYLVANIA,

*Debtor*

CHESTER WATER AUTHORITY,

*Appellant*

v.

CITY OF CHESTER, PENNSYLVANIA

*Appellee*

On Appeal from the United States District Court for the
Eastern District of Pennsylvania, No. 2:25-cv-1114 (Perez, J.)
Bankr. Case No. 22-13032 (Chan, J.)

## APPENDIX FOR APPELLANT
## Volume I of IV, pp.1-16

Kevin Dooley Kent
Cynthia M. Filipovich
Andrew K. Garden
CLARK HILL PLC
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8531
kkent@clarkhill.com
cfilipovich@clarkhill.com
agarden@clarkhill.com

Jeffrey M. Harris
Rachael C.T. Wyrick
Julius Kairey
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
Telephone: (703) 243-9423
jeff@consovoymccarthy.com
rachael@consovoymccarthy.com
julius@consovoymccarthy.com

January 7, 2026

*Counsel for Appellant Chester Water Authority*

# TABLE OF CONTENTS

Volume I

Bankr. Court Doc. 692      Order Enforcing Automatic Stay (Feb. 13, 2025) ....... Appx1

Bankr. Court Doc. 713      Amended Order Enforcing Automatic Stay (Feb. 21, 2025) ................................................................................. Appx3

Distr. Court Doc. 49        Memorandum Opinion (Sep. 4, 2025) ......................... Appx5

Distr. Court Doc. 50        Notice of Appeal (Sep. 12, 2025) ................................. Appx12

Distr. Court Doc. 51        Order Denying Appellants Motion to Certify and Motion to Stay (Sep. 18, 2025) ..................................... Appx16

Volume II

Distr. Court Docket .............................................................................................. Appx17

Bankr. Court Docket ............................................................................................. Appx26

Bankr. Court Doc. 36        Chester Water Authority's Objection to Debtor's Motion for an Order Finding That 11 U.S.C. § 362 Does Not Operate as a Stay of the Receiver's Modi-fication of Amended Recovery Plan Pending Before the Commonwealth Court of Pennsylvania, or Alter-natively for Relief from the Automatic Stay (Nov. 15, 2022) ....................................................................... Appx146

Bankr. Court Doc. 583      Plan for the Adjustment of Debts of the City of Chester (Aug. 26, 2024) ............................................... Appx163

Bankr. Court Doc. 600      Motion by Chester Water Authority for Declaration that Automatic Stay Does Not Apply, or Alterna-tively, to Lift the Stay Relating to the Pending State Court Appeal (Sep. 25, 2024) ..................................... Appx216

Bankr. Court Doc. 600-8    Motion by Chester Water Authority for Declaration that Automatic Stay Does Not Apply, or Alterna-tively, to Lift the Stay Relating to the Pending State

|  |  | Court Appeal, Exhibit G pp.175-178 (Sep. 25, 2024) ...............................................................Appx276 |
|  |  |  |
| Bankr. Court Doc. 629 | Stipulation and Agreed Order Regarding Motion by Chester Water Authority for Declaration that Automatic Stay Does Not Apply, or Alternatively, to Lift the Stay Relating to the Pending State Court Appeal (Nov. 20, 2024) ............................................Appx280 |

## Volume III

| Bankr. Court Doc. 679 | Emergency Motion of Debtor, The City of Chester, for Order Enforcing the Automatic Stay and Imposing Sanctions Against Chester Water Authority (Feb. 7, 2025).................................................................Appx287 |
| Bankr. Court Doc. 686 | Chester Water Authority's Objection to Emergency Motion of Debtor, the City of Chester, for Order Enforcing the Automatic Stay and Imposing Sanctions Against Chester Water Authority (Feb. 12, 2025) ...............................................................Appx420 |
| Bankr. Court Doc. 695 | Chester Water Authority's Emergency Motion for Clarification as to Scope of Order Enforcing Automatic Stay and For Limited Stay of Relief from Order Pending Adjudication of This Motion, Or Alternatively, For Reconsideration of Order (Feb. 14, 2025) ...............................................................Appx550 |
| Bankr. Court Doc. 707 | Feb. 12, 2025 Hearing Transcript ..............................Appx559 |

## Volume IV

| Bankr. Court Doc. 719 | Feb. 20, 2025 Hearing Transcript ..............................Appx615 |
| Bankr. Court Doc. 720 | Notice of Appeal (Feb. 27, 2025)..............................Appx676 |
| Bankr. Court Doc. 736 | Order Setting Hearing (Mar. 10, 2025) ...................Appx683 |
| Bankr. Court Doc. 736-3 | Order Setting Hearing, Exhibit C (Mar. 10, 2025) .Appx728 |
| Bankr. Court Doc. 742 | Appellant Chester Water Authority's Designation of Record and Statement of Issues Pursuant to Fed. R. |

Bank. P. 8009(a)(1) re ECF 702 (Notice of Appeal re
ECF 692, 713) (Mar. 13, 2025)...................................Appx733

Bankr. Court Doc. 771    Order Denying Motion for Stay (Apr. 4, 2025).......Appx739

Bankr. Court Doc. 781    Order Scheduling Further Hearing on Emergency
Motion of Debtor, the City of Chester, for Order
Enforcing the Automatic and Imposing Sanctions
Against Chester Water Authority (Apr. 9, 2025).....Appx740

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 9 |
|  | : |  |
| CITY OF CHESTER, PENNSYLVANIA, | : | Case No. 22-13032 |
|  | : |  |
| Debtor. | : | Judge Ashely M. Chan |
|  | : |  |

## ORDER ENFORCING THE AUTOMATIC STAY AGAINST
## THE CHESTER WATER AUTHORITY

Upon consideration of the *Emergency Motion of Debtor, the City of Chester, for Order Enforcing the Automatic Stay and Imposing Sanctions Against Chester Water Authority* [Docket No. 679] (the "Motion"),[1] the Court having reviewed the Motion, all pleadings filed by Chester Water Authority ("CWA") in opposition thereto, and having heard argument on the Motion at a hearing held on February 12, 2025 (the "Hearing"); the Court having determined that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and, (c) notice of the Motion was sufficient under the circumstances; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein including for the reasons set forth on the record at the Hearing, which are incorporated into this Order for purposes of Rule 52(a)(1) of the Federal Rules of Civil Procedure, made applicable to this matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c);

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is granted, in part, as set forth in this Order.

---

[1] Capitalized terms not otherwise defined herein, shall have the meaning given to them in the Motion.

2.      Within 24 hours following entry of this Order, CWA shall send a notice of withdrawal ("Withdrawal") to all parties (the "Parties") to whom CWA or its agents have issued one or more RTKL requests referring to, relating to or in any way touching upon the City's RFP Process (collectively, for purposes of this Order, the "RTKL Requests").  CWA shall include a copy of this Order with each Withdrawal.

3.      Within 48 hours following entry of this Order, counsel for CWA shall (a) file with this Court a certification of counsel confirming that CWA has complied with Paragraph 2 of this Order; and (b) provide to counsel for the City (but not publicly) a list that includes (i) the identity of each of the Parties to whom the Withdrawal and Order were sent, and (ii) the date of the corresponding RTKL Request(s).

4.      Until further order of this Court, CWA is enjoined from issuing any RTKL request to any entity that in any way refers to, relates to or touches upon the RFP Process.

5.      By no later than February 19, 2025, the City and CWA shall submit a scheduling order that addresses any further briefing and discovery necessary to resolve all remaining issues related to the Motion.  If the parties cannot agree on a schedule they shall submit competing proposed schedules.

6.      This Court shall retain jurisdiction over all matters arising from or related to this Order.

7.      This Order shall be immediately effective notwithstanding any provision of the Bankruptcy Code, Bankruptcy Rules or Local Rules that might otherwise apply to stay this Order.

Dated: February 13, 2025      _____

Ashely M. Chan
United States Bankruptcy Judge

2

**Appx2**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE | : | Chapter 9 |
| | : | |
| CITY OF CHESTER, | : | |
| | : | Bankruptcy No. 22-13032-AMC |
| DEBTOR | : | |
| | : | |

**AMENDED ORDER ENFORCING THE AUTOMATIC STAY AGAINST THE
CHESTER WATER AUTHORITY[1]**

Upon consideration of the *Emergency Motion of Debtor, the City of Chester, for Order Enforcing the Automatic Stay and Imposing Sanctions Against Chester Water Authority* [Docket No. 679] (the "Motion"),[2] the Court having reviewed the Motion, all pleadings filed by Chester Water Authority ("CWA") in opposition thereto, and having heard argument on the Motion at a hearing held on February 12, 2025 (the "Hearing"); the Court having determined that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and (c) notice of the Motion was sufficient under the circumstances; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein including for the reasons set forth on the record at the Hearing, which are incorporated into this Order for purposes of Rule 52(a)(1) of the Federal Rules of Civil Procedure, made applicable to this matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c);

---

[1] Upon consideration of the *Emergency Motion for Clarification as to Scope of Order Enforcing Automatic Stay and For Limited Stay of Relief from Order Pending Adjudication of This Motion, or Alternatively, for Reconsideration of Order* [Docket No. 695] filed by the Chester Water Authority, the Court amends its order entered on February 13, 2025 [Docket No. 692] to clarify that the Court only intended that CWA withdraw the "Stay Violating Requests" as defined in the *Emergency Motion of Debtor, the City of Chester, for Order Enforcing the Automatic Stay and Imposing Sanctions Against Chester Water Authority* [Docket No. 679] at this juncture, and to clarify that the Court only intended to enjoin the issuance of additional Right to Know Law Requests which relate to or reference the City of Chester's "RFP Process" as defined in the Plan of Adjustment [Docket No. 583].

[2] Capitalized terms not otherwise defined herein, shall have the meaning given to them in the Motion.

1

**Appx3**

IT IS HEREBY ORDERED THAT:

1. The Motion is granted, in part, as set forth in this Order.

2. To the extent CWA has not already done so, within 24 hours following entry of this Order, CWA shall send a notice of withdrawal ("Withdrawal") to all parties (the "Parties") to whom CWA or its agents have issued one or more Stay Violating Requests. CWA shall include a copy of this Order with each Withdrawal.

3. To the extent CWA has not already done so, within 48 hours following entry of this Order, counsel for CWA shall (a) file with this Court a certification of counsel confirming that CWA has complied with Paragraph 2 of this Order; and (b) provide to counsel for the City (but not publicly) a list that includes (i) the identity of each of the Parties to whom the Withdrawal and Order were sent, and (ii) the date of the corresponding Stay Violating Requests.

4. Until further order of this Court, CWA is enjoined from issuing any RTKL request to any entity that in any way refers to or relates to the RFP Process.

5. The City and CWA shall submit a scheduling order that addresses any further briefing and discovery necessary to resolve all remaining issues related to the Motion. If the parties cannot agree on a schedule they shall submit competing proposed schedules.

6. This Court shall retain jurisdiction over all matters arising from or related to this Order.

7. This Order shall be immediately effective notwithstanding any provision of the Bankruptcy Code, Bankruptcy Rules or Local Rules that might otherwise apply to stay this Order.

Dated: February 21, 2025

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge

**Appx4**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHESTER WATER AUTHORITY** | : | **Case No. 25-cv-1114-MRP** |
| Appellant | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF CHESTER, PENNSYLVANIA** | : | |
| | : | |
| Appellee | : | |
| | : | |
| **In re:** | : | **Case No. 22-13032-AMC** |
| | : | |
| **CITY OF CHESTER, PENNSYLVANIA,** | : | |
| | : | |
| Debtor. | : | |

**Perez, J.**                                                                                  **September 4, 2025**

## MEMORANDUM

This is an appeal arising from the Chapter 9 bankruptcy proceedings commenced by the City of Chester (the "City") on November 10, 2022 in the Bankruptcy Court for the Eastern District of Pennsylvania presided over by Judge Ashley M. Chan. As part the bankruptcy proceedings, the City filed a plan on August 26, 2024 wherein it proposed dissolving the Chester Water Authority ("CWA") and monetizing its assets through a request for proposals process ("RFP process").

In response to the RFP process, the CWA issued requests to public entities under the Pennsylvania Right to Know Law, 65 P.S. §§ 67.101 *et seq.* ("RTKL").[1] The City thereafter filed a motion ("Stay Violation Motion") seeking enforcement of the automatic stay under Bankruptcy Code § 362(a)(3), on the grounds that the RTKL requests were efforts to undermine the RFP process.[2] The Bankruptcy Court entered an initial order ("Original Order") granting enforcement

---

[1] ECF No. 7 at ¶ 5.
[2] ECF No. 20 at 2.

of the stay on February 13, 2025, and upon the CWA's motion for reconsideration, entered an amended order ("Amended Order") on February 21, 2025.[3] The Amended Order required the CWA to withdraw, within 24 hours of the Order, all RTKL requests it had issued.[4] The Amended Order further stated:

> 4. Until further order of this Court, CWA is enjoined from issuing any RTKL request to any entity that in any way refers to or relates to the RFP Process.
> 5. The City and CWA shall submit a scheduling order that addresses any further briefing and discovery necessary to resolve all remaining issues related to the [Stay Violation] Motion.[5]

The CWA appealed to this Court from the Original Order and Amended Order. On April 17, 2025, the City moved to dismiss the appeal without leave to file a further interlocutory appeal from the Amended Order. The City makes two arguments in support of its motion: that an appeal from the Amended Order does not satisfy the standards for the Court to allow an interlocutory appeal as a matter of discretion under 28 U.S.C. § 158(a)(3); and that the Amended Order is not a preliminary injunction appealable as a matter of right under 28 U.S.C. § 1292(a)(1).

For the reasons that follow, the Court grants the City's motion.

## I. LEGAL STANDARD

Pursuant to 28 U.S.C. § 158(a), district courts have jurisdiction to hear appeals from both final and interlocutory orders of bankruptcy courts. However, interlocutory appeals are allowed only with leave of the district court. 28 U.S.C. § 158(a)(3). While in ordinary civil litigation, only orders that dispose of all issues as to all parties are considered final, the Third Circuit construes finality in bankruptcy appeals "in a more pragmatic, functional sense." *In re Prof'l Ins. Mgmt.*, 285 F.3d 268, 279 (3d Cir. 2002). The rationale for this differentiated approach is that bankruptcy

---

[3] ECF No. 7 at ¶¶ 9-12.
[4] Bk. Dkt. No. 713 at ¶ 2.
[5] Bk. Dkt. No. 713 at ¶¶ 4, 5.

cases often involve protracted proceedings and multiple parties with different claims, which could mean that waiting to resolve discrete claims until the final approval of, for instance, a reorganization plan wastes time and resources. *Id.* Notwithstanding this, the Third Circuit "adheres to the traditional, less flexible standard of finality when no countervailing bankruptcy considerations are present." *Com. Bank v. Mountain View Vill., Inc.*, 5 F.3d 34, 37 (3d Cir. 1993).

In determining whether to grant leave for interlocutory appeal under § 158(a)(3), district courts have applied the standard set forth in 28 U.S.C. § 1292(b), which governs interlocutory appeals from a district court to a court of appeals. *See, e.g.*, *In re Powell*, No. 06-4085, 2006 WL 3208843 at *2 (E.D. Pa. Nov. 3, 2006); *In re Flintkote Co.*, 471 B.R. 95, 102 (D. Del. 2012). Under § 1292(b), a court may grant leave only if (i) the order involves a controlling question of law (ii) as to where there is substantial ground for difference of opinion, and (iii) immediate appeal from the order may materially advance the ultimate termination of the litigation. Even if these requirements are met, the district court still has discretion to deny the appeal. *Miranda v. C.H. Robinson Co.*, 2020 WL 1643694 at *1 (E.D. Pa. Apr. 2, 2020). An interlocutory appeal is only appropriate in exceptional circumstances. *In re Powell*, 2006 WL 3208843 at *2.

28 U.S.C. § 1292(a)(1) provides that "the court of appeals shall have jurisdiction of appeals" from "interlocutory orders of the district courts of the United States. . . granting, continuing, modifying, refusing or dissolving injunctions." Appeals under § 1292(a)(1) are available as a matter of right. *DeJohn v. Temple Univ.*, 537 F.3d 301, 308 (3d Cir. 2008).

## II.    DISCUSSION

The City's motion presents two separate statutory provisions on which CWA could base its appeal: 28 U.S.C. § 158(a)(3) and 28 U.S.C. § 1292(a)(1). The Court addresses them in turn.

### A.  Whether the Amended Order merits discretionary appeal under § 158(a)(3)

The City argues that an interlocutory appeal from the Amended Order does not merit a discretionary grant of leave by the Court.

As a threshold matter, the Court concludes that the Amended Order is interlocutory, not final. The Amended Order enjoins the CWA from issuing further RTKL requests "until further order of this Court." The Order also requires a scheduling order addressing briefing and discovery necessary to resolve "all remaining issues related to the [Stay Violation] Motion." These "remaining issues" refer to whether the Bankruptcy Court should grant the relief sought in the Stay Violation Motion, which asks the Bankruptcy Court to prohibit the CWA from violating the automatic stay and impose sanctions for the violation.[6] Bankruptcy orders that "contemplate[] future action on the part of both parties" would be considered interlocutory in the context of a civil case. *In re Oglesby*, 158 B.R. 602, 605 (E.D. Pa. 1993). Because the Amended Order does not resolve all issues as to the Stay Violation Motion, it would not be considered final if it had been issued in the course of ordinary civil litigation.

While it is true that finality is construed more flexibly in bankruptcy appeals than ordinary civil appeals, the Amended Order does not raise the kind of concern that led the Third Circuit to adopt the differentiated approach. Its context does not involve the kind of circumstances unique to bankruptcy proceedings that would make denial of appeal an inefficient use of judicial resources. *See In re Prof'l Ins. Mgmt.*, 285 F.3d at 279; *Com. Bank v. Mountain View Vill., Inc.*, 5 F.3d at 37. Thus, an appeal from the Amended Order is an interlocutory appeal that must satsify the standards set forth in 28 U.S.C. § 1292(b).

---

[6] Bk. Dkt. No. 679 at 1.

Under § 1292(b), the appeal fails the requirement that it "materially advance the ultimate termination of the litigation." An interlocutory appeal materially advances litigation if it "(1) eliminate[s] the need for trial, (2) eliminate[s] complex issues so as to simplify the trial, or (3) eliminate[s] issues to make discovery easier less costly." *Orson, Inc. v. Miramax Film Corp.*, 867 F.Supp 319, 322 (E.D. Pa. 1994). The Amended Order does none as to the proceeding related to the Stay Violation Motion or the bankruptcy proceeding itself. Furthermore, the Court finds no exceptional circumstance in this case that would overcome the presumption against piecemeal litigation. *See Holber v. Portnoy*, 2018 WL 1508749, at *1.

As such, the Court denies leave for discretionary appeal under § 158(a)(3).

## B.  Whether the Amended Order is a preliminary injunction appealable as a matter of right under § 1292(a)(1)

The City also argues that if the basis for CWA's appeal is § 1292(a)(1), the appeal should be dismissed because the Amended Order is not a preliminary injunction, and even if it were, § 1292(a)(1) does not apply to bankruptcy court orders.

The Court agrees that the Amended Order is not a preliminary injunction. An order enforcing the automatic stay under the Bankruptcy Code is a mechanism that is distinct from a preliminary injunction. The analysis in *In re THG Holdings LLC*, No. 19-11689 (JTD), 2020 WL 1493622 (D. Del. Mar. 27, 2020) is instructive. There, the debtor simultaneously filed in the bankruptcy court a complaint asserting that the counterparty violated the automatic stay and a motion for preliminary injunction seeking to enforce the automatic stay. *Id.* at *1. Following a hearing on the preliminary injunction motion, the bankruptcy court entered an order enforcing an automatic stay. *Id.* In the order, the bankrupty court stated that it was not necessary for the debtor to establish the requirements for a preliminary injunction "because the Bankruptcy Code itself establishes the basis for enforcement of the automatic stay," and even if it were necessary, the

debtor met those requirements. *Id.* at *3. The district court agreed, stating that "[t]he Order enforces the automatic stay, which is 'self-effectuating, effective upon the filing of the bankruptcy petition.'" *Id.* (quoting *Gruntz v. County of Los Angeles*, 202 F.3d 1074, 1081-82 (9th Cir. 2000)). As the Delaware district court notes, the automatic stay is self-effectuating by statute and is merely enforced by the court, while an injunction is imposed by the court if it determines that the movant has satisfied the necessary elements.

The CWA argues that the Amended Order is a preliminary injunction because it has the same effect as one. This argument is unpersuasive. The CWA cites to *Saudi Basic Indus. Corp. v. Exxon Corp.*, 364 F.3d 106, 110 (3d Cir. 2004), where the Third Circuit stated that "[a]n order need not have the 'literal characterization' of an injunction for § 1292(a)(1) to apply, as long as it has the same practical effect." However, even if the Court were to characterize the Amended Order based on its "practical effect," the Amended Order is still not an injunction. The Third Circuit defines an injunction as "[1] directed to a party, [2] enforceable by contempt, and [3] designed to accord or protect 'some or all of the substantive relief sought by a complaint' *in more than a temporary fashion.*" *Id.* (emphasis added). As the Court concluded earlier, the Amended Order is interlocutory, effective "until further order of [the Bankruptcy Court]." This is especially true where the filing and scheduling for the hearing on the Stay Violation Motion is underway in the Bankruptcy Court. The Amended Order cannot be considered a preliminary injunction, even in the purely practical sense.

Whether § 1292(a)(1) applies to appeals from injunctive orders of bankruptcy courts is an unsettled question within the Third Circuit that this Court declines to address today. The Third Circuit has stated in *dicta* that § 1292(a)(1) also governs appeals from bankruptcy court injunctions. *In re Prof'l Ins. Mgmt.*, 285 F.3d at 282 n.16 ("In addition, we agree that the District Court, sitting

as an appellate court, was authorized to hear the appeal from the Bankruptcy Court as an appealable injunctive order under 28 U.S.C. § 1292(a)…"); *In re World Imports Ltd.*, 820 F.3d 576, 582 n.5 (3d Cir. 2016) ("Pursuant to 28 U.S.C §§ 158(a) and 1292(a), the District Court had jurisdiction over the appeal from the Bankruptcy Court's order granting injunctive relief.") Courts within the Third Circuit have taken the same position, both before and after the *dicta* was first issued. *See, e.g.*, *In re Reliance Acceptance Grp., Inc.*, 235 B.R. 548, 553 (D. Del. 1999); *In re Midstate Mortg. Invs. Grp., LP*, No. CIVA 06-2581 FLW, 2006 WL 3308585 at *4 (D.N.J. Nov. 6, 2006); *In re Byju's Alpha, Inc.,* No. 24-10140 (JTD), 2024 WL 3487793 at *5 (D. Del. July 18, 2024). On the other hand, the Third Circuit's *dicta* is not binding on this Court. *See, e.g.*, *Romero v. Allstate Ins. Co.*, 170 F. Supp. 3d 779, 793 (E.D. Pa. 2016) ("Dicta in a decision of the court of appeals is not binding on lower courts . . . ."). Because the Court need not address the applicability of § 1292(a)(1) to the present appeal to resolve the motion at hand, it will not do so.

In sum, because the Amended Order is not an injunction under § 1292(a)(1), the CWA is not entitled to an appeal as a matter of right. The Court grants the City's motion to dismiss. An appropriate order follows.

**Appx11**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re:<br><br>CITY OF CHESTER,<br>PENNSYLVANIA,<br><br>            *Debtor.* | Chapter 9<br><br>Bankr. Case No. 22-13032-amc |
| CHESTER WATER AUTHORITY,<br>            *Appellant*,<br>v.<br>CITY OF CHESTER,<br>PENNSYLVANIA,<br>            *Appellee.* | CIVIL ACTION<br><br>Case No. 2:25-cv-1114-MRP |

## NOTICE OF APPEAL

Notice is hereby given that Appellant Chester Water Authority appeals to the United States Court of Appeals for the Third Circuit the order granting Appellee's motion to dismiss, entered on September 4, 2025. Dkt. 48.

**Appx12**

Dated: September 12, 2025

Kevin Dooley Kent (Pa. I.D. No.
85962)
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8531
Facsimile: (215) 640-8501
kkent@clarkhill.com

Andrew K. Garden (Pa. I.D. No.
314708)
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8500
Facsimile: (215) 640-8501
agarden@clarkhill.com

William C. Price (Pa. I.D. No. 90871)
301 Grant Street, 14th Floor
Pittsburgh, PA 15219
Telephone: (412) 394-7776
Facsimile: (412) 394-2555
wprice@clarkhill.com

Megan A. Guernsey (Pa. I.D. No.
202065)
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8522
Facsimile: (215) 640-8501
mguernsey@clarkhill.com

Ronald A. King (MI Bar No. P45088)*
215 South Washington Square, Suite
200
Lansing, MI 48933
Telephone: (517) 318-3015
Facsimile: (517) 318-3099
rking@clarkhill.com

Respectfully submitted,

/s/ *Jeffrey M. Harris*
Jeffrey M. Harris (Va Bar No. 93883)*
Rachael C.T. Wyrick (Va Bar No.
99763)*
Julius Kairey (Va. Bar No. 101216)*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
Telephone: (703) 243-9423
jeff@consovoymccarthy.com
rachael@consovoymccarthy.com
julius@consovoymccarthy.com

*pro hac vice*

Jennifer K. Green (Ml Bar No. P69019)*
151 S. Old Woodward, Suite 200
Birmingham, MI 48009
Telephone: (248) 988-2315
Facsimile: (248) 642-2174
jkgreen@clarkhill.com

*pro hac vice

*Counsel for Chester Water Authority*

3

# CERTIFICATE OF SERVICE

I certify that on September 12, 2025, I electronically filed the foregoing with the Clerk of the Court using the Court's ECF system, which will automatically send email notification to all counsel of record.

*/s/ Jeffrey M. Harris*

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHESTER WATER AUTHORITY** | : | |
| | : | **Case No. 25-cv-1114-MRP** |
| Appellant | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF CHESTER, PENNSYLVANIA** | : | |
| | : | |
| Appellee | : | |
| | : | |
| **In re:** | : | **Case No. 22-13032-AMC** |
| | : | |
| **CITY OF CHESTER, PENNSYLVANIA,** | : | |
| | : | |
| Debtor. | : | |

## <u>ORDER</u>

**AND NOW**, this 18th day of September, 2025, upon review of the docket in this matter and in light of this Court's Order granting Appellee's motion to dismiss (ECF No. 48), it is hereby **ORDERED** as follows:

1. Appellant's Motion to Certify (ECF No. 6) is **DENIED AS MOOT.**

2. Appellant's Motion to Stay (ECF No. 23) is **DENIED AS MOOT.**

3. The Clerk of Courts is directed to close this matter.

BY THE COURT:

_____
HON. MIA R. PEREZ

**Appx16**