No. 25-2783

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

IN RE: CITY OF CHESTER, PENNSYLVANIA,

*Debtor.*

CHESTER WATER AUTHORITY,

*Appellant,*

v.

CITY OF CHESTER, PENNSYLVANIA,

*Appellee.*

On Appeal from the United States District Court for the
Eastern District of Pennsylvania, No. 2:25-cv-1114 (Perez, J.)
Bankr. Case No. 22-13032 (Chan, J.)

## RESPONSE TO APPELLEE'S MOTION TO SUSPEND BRIEFING, VACATE BANKRUPTCY COURT ORDERS, AND DISMISS APPEAL

| | |
|---|---|
| Kevin Dooley Kent | Jeffrey M. Harris |
| Cynthia M. Filipovich | Rachael C.T. Wyrick |
| Andrew K. Garden | Julius Kairey |
| CLARK HILL PLC | CONSOVOY MCCARTHY PLLC |
| 2001 Market Street, Suite 2620 | 1600 Wilson Blvd., Suite 700 |
| Philadelphia, PA 19103 | Arlington, VA 22209 |
| Telephone: (215) 640-8531 | Telephone: (703) 243-9423 |
| kkent@clarkhill.com | jeff@consovoymccarthy.com |
| cfilipovich@clarkhill.com | rachael@consovoymccarthy.com |
| agarden@clarkhill.com | julius@consovoymccarthy.com |

January 29, 2026　　　　　　　　　*Counsel for Appellant Chester Water Authority*

This appeal between Appellant Chester Water Authority and Appellee City of Chester is well underway. After extensive briefing on the Authority's motion to expedite and the City's motion to dismiss for lack of jurisdiction, this Court ordered the appeal expedited and referred the motion to dismiss to a merits panel. *See* Doc. 26. The Authority filed its opening merits brief on January 7, 2026, arguing that this Court has jurisdiction and should vacate the Bankruptcy Court's Orders. *See* Doc. 27. Five days before its own merits brief was due, the City filed a second motion to dismiss. That motion no longer disputes that this Court has jurisdiction and does not attempt to defend the challenged Orders on the merits. Instead, the City now urges the Court to vacate the Bankruptcy Court's Orders (or direct the Bankruptcy Court to do so) in light of the Pennsylvania Supreme Court's recent decision in *In re Chester Water Auth. Tr.*, 2026 WL 168066 (Pa. Jan. 21, 2026). *See* Doc. 38 (Mot.) at 1, 4.

The Authority agrees that this Court has jurisdiction and that the Bankruptcy Court's Orders should be vacated, for the reasons explained in its opening brief, *see* Doc. 27 at 3-4, 31-50, and supplemental authority letter, *see* Doc. 36 (Authority's Rule 28(j) letter).[1] Those Orders were erroneous from the start, but the Pennsylvania Supreme Court's decision eliminates any doubt. The Pennsylvania Supreme Court held

---

[1] The City faults the Authority for filing its Rule 28(j) letter "without any consultation or conference" with the City. Mot. at 3-4. But nothing in Rule 28(j) requires pre-filing conferral with the opposing party. And the City cannot dispute that the Pennsylvania Supreme Court's decision is a "pertinent and significant authorit[y]" that came down "after [the Authority's] brief" was filed. Fed. R. App. P. 28(j).

1

that the "City no longer possesses the unilateral power to acquire [the Authority's] projects" under Pennsylvania law. *In re Chester Water Auth. Tr.*, 2026 WL 168066, at *30. And the Pennsylvania Supreme Court "firmly reject[ed] arguments suggesting directly or by analogy that [the] City has vested property rights associated with its relationship to [the Authority]." *Id.* at *18.

Because the City has no cognizable interest in the Authority's property, the Authority's requests under the Pennsylvania Right to Know Law (RTKL) could not have violated the automatic stay. *See* Doc. 27 at 38-42. Indeed, in issuing its injunction against the Authority, the Bankruptcy Court expressly relied on the intermediate appellate court decision that has now been *reversed* by the Pennsylvania Supreme Court. *Id.* at 41 (citing Appx564).

The City, however, does not want this case decided on the merits. It argues that the appeal is now moot, because—five days before its brief was due—it unilaterally "decided to withdraw the Motion giving rise to the [Bankruptcy Court's] Orders and suspend the RFP Process that the [Bankruptcy Court's] Orders were intended to protect." Mot. at 3. But the City simultaneously states that it "refutes" the Authority's categorization of the Pennsylvania Supreme Court's decision, without explaining how the Authority's categorization (which merely quoted the court's decision) is wrong. *Id.* at 4. The City also includes in its motion a statement "reserv[ing] all rights with respect to any potential legal arguments the City may have in light of the Pennsylvania Supreme

2

Court's decision," and specifying that it is not "waiv[ing] … any legal argument asserted by the City." *Id.* at 5.

The City does not cite a single case about the legal standard for dismissing a case as moot based on one party's unilateral, voluntary action. That standard is demanding: the City must show that its conduct that gave rise to this case will not recur. Otherwise, the City's unilateral action in withdrawing its motion in the Bankruptcy Court and suspending the RFP process is merely a voluntary (and potentially reversable) cessation of the actions that gave rise to this appeal. The City's vague representations about the effect of the Pennsylvania Supreme Court's decision on further Bankruptcy Court proceedings provide cold comfort to the Authority that the actions giving rise to this appeal will not recur.

The Authority ultimately agrees that this Court should summarily reverse and vacate the challenged orders, without the need for further briefing or oral argument.[2] But the Court should also say why it is doing so: *because the Pennsylvania Supreme Court's decision forecloses the relief sought by the City and ordered by the Bankruptcy Court*. And the Orders at issue represent an unprecedented attempt by a federal bankruptcy court to enjoin a

---

[2] The City represents that the Authority "declined to consent to the City's request to vacate the Stay Orders." Mot. at 3. But that leaves out important context. The Authority stated by email that it could not consent until it "see[s] the reasons [the City] will offer the Bankruptcy Court about why [the City] now believe[s] the [O]rders should be vacated." Now that the City has filed its motion, the Authority offers this response.

3

state entity from exercising its state-conferred power, in violation of both the Tenth Amendment and Bankruptcy Code.

Given the City's refusal to backtrack on its previous legal arguments and its lack of any representation that it will not file similar motions in the future, it is important for this Court to explain why it is vacating the Bankruptcy's Court's orders. Such a ruling is needed to protect the Authority's interests and prevent gamesmanship or recurrence after the appeal is resolved. Alternatively, the Court should order merits briefing to be completed and should proceed with the oral argument currently scheduled for March 23.

## LEGAL STANDARD

Without confessing error (or backtracking in any way from its prior positions), the City has represented that it will no longer defend the Bankruptcy Court's Orders, and has asked this Court to vacate them. But nowhere in its motion does the City cite the legal standard for mooting a case based on one party's unilateral action. It is well-established that "[v]oluntary cessation of challenged activity will moot a case only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Fields v. Speaker of Pennsylvania House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019). "The party urging mootness bears the 'heavy burden' of showing that it will not 'revert to' its prior policy." *Id.* A party's decision to continue to defend the legality of its conduct weighs against finding mootness. *Id.* And where a party

4

changes its behavior "in response to … litigation," that too undermines its argument that a dispute is no longer live. *Id.*

## ARGUMENT

The Authority and the City now both agree that this Court should vacate the Orders below, and the City does not contest the Court's jurisdiction to do so. But the City's unilateral decision to "suspend[] the RFP Process" and "file[] a motion in the Bankruptcy Court" to withdraw the challenged actions does not make it absolutely clear that the City will not take future actions similar to those that have given rise to this appeal. Mot. at 3. Nor has the City disavowed any of its prior arguments; to the contrary, it has explicitly stated that it is *not* doing so. To ensure adequate protection of the Authority's interests, and to prevent recurrence of the conduct at issue, this Court should explicitly state in vacating the Orders that the relief granted therein is now foreclosed by the Pennsylvania Supreme Court's decision.

**I.    The City's motion fails to provide adequate assurance that the conduct at issue will not recur.**

The City asserts that "changed circumstances arising from the Pennsylvania Supreme Court's decision" warrant vacating the Bankruptcy Court's Orders and dismissing the appeal as moot. Mot. at 4. But the City does not cite the relevant legal standard for mootness or make any attempt to explain why it is satisfied.

The City's motion in its current form is too vague to show that its unilateral, voluntary cessation makes this appeal moot. For example, the City states that it has "suspended" the RFP process to sell the Authority's assets, Mot. at 3, without saying

5

for how long or whether it reserves the right to restart that process at some point. And the City states that it is seeking to "withdraw" its motion to enforce the automatic stay that gave rise to the Orders at issue here, without saying more than that "the legal authority underlying the [Bankruptcy Court's] Orders has materially changed." *Id.*

Importantly, the City also conspicuously fails to disavow its prior position that the Authority's RTKL requests violated the automatic stay. Without a clear statement from the City that (1) it will no longer seek to bar the Authority from issuing RTKL requests and (2) the Pennsylvania Supreme Court's decision would prevent it from doing so, nothing stops the City from seeking the same relief again after this Court dismisses the appeal. While the City has moved to withdraw the underlying motion that succeeded in enjoining the Authority from issuing RTKL requests, that unilateral action does not concede error or explain why the Orders—which the City has vigorously defended until it filed this motion—are now so infirm that the City is unwilling to defend them before this Court. Indeed, far from confessing error, the City has included an explicit "**RESERVATION OF RIGHTS**" and has represented that its request to vacate the Orders "does not reflect a waiver of any legal argument asserted by the City in the underlying proceedings." Mot. at 5.

At bottom, the City is attempting to withdraw its motions and moot this case, without any admission that the challenged Orders are erroneous. Under *Fields*, these circumstances weigh against a finding of mootness. *See* 936 F.3d at 161. Even if the City is attempting to *discontinue* the conduct at issue by withdrawing the underlying motions,

6

that alone is insufficient without some concession or acknowledgment by the City that its prior legal arguments were wrong. Without such a concession, the City is still adhering to its previous position that application of the automatic stay against the Authority was legally proper. *See Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (finding no mootness where defendant union had offered a full refund of money the plaintiffs claimed was collected unlawfully because "the union continue[d] to defend the legality" of its action, making it "not clear why the union would necessarily refrain from collecting similar fees in the future"); *Fields*, 936 F.3d at 161 (finding no mootness because defendant "continues to defend" the legality of its policy); 13C Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* §3533.7 (3d ed.) ("One element that has been considered in evaluating permanence is a defendant's continuing assertion that the abandoned policy was legal.") (citing *Fields*, 936 F.3d at 161-62).

In short, the City is trying to have things both ways. It is seeking to moot this appeal by "withdrawing" the underlying motion and asking this Court to vacate the Orders that the Authority is appealing. But the City is simultaneously "reserving all rights" and refusing to backtrack from or confess error on any legal arguments it has previously made. All of this casts serious doubt on whether the conduct that gave rise to this appeal "could not reasonably be expected to recur." *Fields*, 936 F.3d at 161. And the City's representations (or lack thereof) here are a far cry from the absolute clarity the law of mootness demands. *See id.*

## II. The Court should vacate the Bankruptcy Court's Orders because they are foreclosed by the recent Pennsylvania Supreme Court decision.

The Authority ultimately agrees that the Bankruptcy Court's Orders can (and should) be summarily vacated without further briefing or oral argument. But to ensure that the Authority's interests are protected, and to prevent any recurrence of the challenged conduct by the City, it is critical for this Court to state *why* it is vacating the Orders. Any such decision would be binding on the Bankruptcy Court and would guide it in any similar dispute between the Authority and the City that may arise in the future. By contrast, vacating the Orders without a reasoned decision (as the City urges) would leave the City free to once again attempt to use the automatic stay to stifle the Authority's exercise of its lawful state-law functions.

As explained in the Authority's merits brief, the Bankruptcy Court Orders being challenged here relied heavily on the reasoning of a Pennsylvania intermediate court decision regarding the City's supposed right to dissolve the Authority and seize its assets. *See* Doc. 27 at 41. Even if that intermediate court decision were correct, the Bankruptcy Court's application of the Bankruptcy Code to bar the City's RTKL requests was erroneous, for the reasons the Authority explained. *See id.* at 42.

But the Pennsylvania Supreme Court's reversal of that decision has now placed beyond doubt that the Bankruptcy Court misapplied the automatic stay. The automatic stay allows a bankruptcy court to enjoin "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the

estate." 11 U.S.C. §362(a)(3). It follows that if the property at issue "is not property of the estate, the stay has not been violated" by an act that seeks to take possession of or exercise control over that property. *In re Datesman*, 1999 WL 608856, at *2 (Bankr. E.D. Pa. Aug. 9, 1999).

Here, the Bankruptcy Court applied section 541(a)(1) of the Bankruptcy Code, which provides that the filing of a bankruptcy petition "creates an estate … comprised of all the following property, wherever located and by whomever held: … all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a). The Bankruptcy Court's belief that the Authority's RTKL requests violated the automatic stay was grounded in its conclusion that the City had an "interest" in the Authority's property within the meaning of section 541(a)(1), such that the Authority's RTKL requests violated the automatic stay by impairing that interest. As the Bankruptcy Court recognized at the hearing, if there was no "property of the debtor" for purposes of section 541, then the Court would lack a basis to find a violation of the automatic stay. *See* Appx566 (Bankruptcy Court emphasizing that "[Section] 541 is so incredibly broad").

Whether the City has a property interest under the Bankruptcy Code is determined by state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Unless some federal interest [such as an act of Congress] requires a different result," "[p]roperty interests are created and defined by state law."). And this Court defers to decisions of

9

the Pennsylvania Supreme Court on Pennsylvania state-law questions. *See Aceto v. Zurich Ins. Co.*, 440 F.2d 1320, 1321-22 (3d Cir. 1971).

The Pennsylvania Supreme Court's decision has now placed beyond doubt that the Authority's assets are not the property of the City. *See In re Chester Water Auth. Tr.*, 2026 WL 168066, at *29 (explaining that Pennsylvania law "clearly answer[s]" the relevant questions, and holding that the "City no longer possesses the unilateral authority … to acquire [the Authority's] projects because those projects are no longer projects 'of a character' that [the] City 'has power to establish, maintain or operate…'"); *see also id.* at *18 (Court "firmly reject[ed] arguments suggesting directly or by analogy that [the] City has vested property rights associated with its relationship to [the Authority]").

The Pennsylvania Supreme Court's decision thus fatally undermines the Bankruptcy Court's conclusion that the City has a "'contingent interest' in the Authority's assets" under the Bankruptcy Code, "such that the Authority's property was property of City's estate." Doc. 27 at 40 (quoting Appx569-70). Because "the Authority's assets are not the property of the City, … the Authority's RTKL requests could not have violated the automatic stay." *Id.* at 39. This Court should correct the Bankruptcy Court's now-obvious error.

The Bankruptcy Court's Orders are also unlawful for the independent reason that they violate the Tenth Amendment. *See id.* at 33-38. The Orders prohibit the Authority (which is a state entity) from learning about the efforts by the City (which is also a state entity) to dissolve it and seize its assets. A bankruptcy court must respect the

power of a state to determine how its political subdivisions are organized and how they interact with one another. *See Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 71 (1978) ("The number, nature and duration of the powers conferred upon municipal corporations and the territory over which they shall be exercised rests in the absolute discretion of the state.") (cleaned up). The Bankruptcy Court's failure to wait for the Pennsylvania Supreme Court's decision on a critical question about the scope of property rights under state law only underscores the extent of its interference with the structure and operations of Pennsylvania's government entities. The Bankruptcy Court's Orders must be vacated because they violate core principles of dual sovereignty and federalism that protect state entities from federal interference in the exercise of power granted to them under state law.

## CONCLUSION

The City asserts that this appeal is moot based on its unilateral decision to abandon the challenged orders but has not taken the steps or made the representations needed to *actually* moot the appeal. To ensure that the Authority's interests are protected, and that the conduct at issue will not recur, any vacatur order should thus explicitly state that the Bankruptcy Court's Orders rest on erroneous reasoning and are foreclosed by the Pennsylvania Supreme Court's recent decision. The Authority agrees that the Orders can be summarily vacated on this basis. Alternatively, the Court should order the completion of merits briefing and proceed with oral argument currently scheduled for March 23.

Respectfully submitted,

| | |
|---|---|
| Kevin Dooley Kent | */s/ Jeffrey M. Harris* |
| Cynthia M. Filipovich | Jeffrey M. Harris |
| Andrew K. Garden | Rachael C.T. Wyrick |
| CLARK HILL PLC | Julius Kairey |
| 2001 Market Street, Suite 2620 | CONSOVOY MCCARTHY PLLC |
| Philadelphia, PA 19103 | 1600 Wilson Blvd., Suite 700 |
| Telephone: (215) 640-8531 | Arlington, VA 22209 |
| kkent@clarkhill.com | Telephone: (703) 243-9423 |
| cfilipovich@clarkhill.com | jeff@consovoymccarthy.com |
| agarden@clarkhill.com | rachael@consovoymccarthy.com |
| | julius@consovoymccarthy.com |
| January 29, 2026 | *Counsel for Appellant Chester Water Authority* |

## COMBINED CERTIFICATIONS

1. Pursuant to Third Circuit L.A.R. 28.3(d), at least one of the attorneys whose names appear on this document, including the undersigned, is a member in good standing of the bar of this Court.

2. This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 2,961 words, excluding the parts of the documented exempted by Fed. R. App. P. 32(f).

3. This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a 14-point proportionally spaced typeface (Garamond) using Microsoft Word.

4. On January 29, 2026, I caused the foregoing to be filed with the Clerk of Court using the CM/ECF System, and all counsel of record in this case is a Filing User who will receive notice of such filing.

Dated: January 29, 2026                              */s/ Jeffrey M. Harris*
                                                     Jeffrey M. Harris